RAPLEY v. KLUGH.

1. Evidence—Code, § 400—Grantee.—A plaintiff in the action and one under whom she claims her rights to the land in dispute, are not incompetent witnesses, under section 400 of the Code of Procedure, to transactions between them and one now deceased, where the defendant defends as fourth grantee in succession from the executor of such deceased person, the defendant not being named in the proviso to section 400 in any of the classes against whom such testimony by a party in interest is interdicted.

2. Ibid.—Assignment of Contract to Purchase—Case Criticised.—Where a purchaser of land under a parol contract has completed his payment of the purchase money, and title to the land is made to his wife by his direction, his verbal assignment is sufficient and may be proved by parol. This case distinguished from Mims v. Chandler. 21 S. C., 494.

3. Ibid.—Receipts.—Parol testimony is admissible to prove that receipts offered in evidence were given to the witnesses by the vendor when payments were made by them on the purchase money of the land in dispute.

4. Ibid.—Uncertainties in Deed.—Where a deed describes the land granted as the "R. H. W. Homestead," containing two hundred acres, more or less, bounded by lands of persons named "and others," the grantor may by parol identify the "R. H. W. Homestead," and testify that "the others" included persons to whom small portions of this land had been previously conveyed.

5. Ibid.—Diagram.—The plaintiff on the stand may refer to and explain a diagram or "sketch of a plat" made by the grantor and attached to the deed under which she holds title.

6. Ibid.—Surveyor.—A surveyor may not be asked on the witness stand whether he discovered any marks on the land to indicate that persons other than those named had got any of the land, the question being leading, irrelevant, and an inquiry of his opinion on the facts.

7. Contract to Purchase Land—The Statute of Frauds is inapplicable to a parol contract for the purchase of land, where receipts by the vendor show that there was some contract between the parties, and the vendee was put in possession by the vendor and afterwards made full payment. And the right of such vendee is superior to that of a purchaser of the same land, subsequent to the contract and possession, but prior to the full payment.

8. Charging Juries—Requests.—Error cannot be imputed to the trial judge for failing to charge that which was not requested.

9. Contract to Purchase—Notice.—In action for the recovery of land, the trial judge properly charged that plaintiff would be entitled to recover under his subsequent deed, if the land was not included in the description

of defendant's deed; but if so included, then defendant must prevail, unless he had notice of plaintiff's rights under her prior contract to purchase.

10. IBID.—IBID.—POSSESSION of land is constructive notice to purchasers of the possessor's rights to the land in possession.

11. IBID.—IBID.—CORPORATIONS—CASE CRITICISED.—Where the president of a corporation, to whom land is conveyed, is informed of the claim of a third person to a portion thereof, and this land is afterwards conveyed to this president and the secretary individually, under a resolution of the board of directors, at a meeting at which this secretary was present, that the conveyance should be made without warranty, and the deed was so drawn, both these purchasers are chargeable with the notice given to the corporation through its president. This case distinguished from First National Bank v. Anderson & Co., 28 S. C., 150.

12. LOCATION.—The question of location is a question of fact to be passed upon by the jury.

13. IMMATERIAL ERROR—ISSUES—PUNITIVE DAMAGES.—Immaterial error in a charge is not ground for new trial. Thus, where the judge submitted to the jury the matter of punitive damages under a complaint which raised no such issue, a new trial will not be granted where the verdict shows that no such damages were allowed; particularly so, where the complaint vaguely raised the charge, and testimony as to this charge was introduced and received without objection.

Before IZLAR, J., Abbeville, January, 1893.

This was an action by Rachel Rapley against James C. Klugh for the recovery of two acres of land, commenced May 28, 1892. The plaintiff claims that her husband contracted with R. H. Wardlaw in 1884 to purchase this land from him. She produced two receipts signed by R. H. Wardlaw, one to Samson Rapley, dated January 23, 1886, for "six dollars, in part payment of land sold him adjoining Robin Guy," and the other dated October 7, 1886, for eighteen 75–100 dollars paid him by Rachel Rapley, "in part payment for land sold to her husband. * * * For any previous payment made, I gave him a receipt." She also produced two receipts to herself from W. C. Wardlaw, as executor of R. H. Wardlaw (who died in 1887), one dated November 27, 1889, for "twenty dollars, in part payment of land purchased from the late R. H. Wardlaw, at the rate of forty dollars per acre;" and one dated November 10, 1890, for "twenty-five dollars, balance due upon tract of land bought

from estate of R. H. Wardlaw." W. C. Wardlaw, as executor, under a general power in his testator's will, conveyed the two acres to Rachel Rapley on November 26, 1890. To this deed was attached a rough diagram, without courses or distances, indicating by boundaries the relative location of the land.

W. C. Wardlaw conveyed to A. L. Gillespie, on December 18, 1888, the R. H. Wardlaw homestead of two hundred acres, more or less, "bounded by lands of J. S. Cothran, A. L. Gillespie, Frank Henry, and others," telling Gillespie at the time of Rapley's claim to the two acres. Gillespie conveyed to the Abbeville Land, Loan, and Improvement Company on March 31, 1890, by the same description. The Abbeville Company conveyed to J. C. Klugh and J. Allen Smith on April 3, 1890, by the same description; and on April 26, 1890, J. A. Smith conveyed to J. C. Klugh his interest in the half of the land on the side where the two acres in dispute were. Klugh afterwards took the possession of these two acres from Rachel Rapley. By resolution of the board of directors of the Abbeville Company, recorded in the minutes by J. C. Klugh as secretary, the deed by the Abbeville Company to Smith and Klugh was without warranty.

*Messrs. DeBruhl & Bradley* and *E. B. Gary,* for appellant.

*Messrs. Benet & Cason,* contra.

November 27, 1893. The opinion of the court was delivered by

MR. JUSTICE POPE. This was an action instituted by Rachel Rapley in the Court of Common Pleas for Abbeville County against James C. Klugh as defendant, for the recovery of two acres of land, situated in said county, and one hundred and fifty dollars damages. The action came on to be heard before his honor, Judge Izlar, and a jury at the January, 1893, term of such court, and resulted in a verdict for the plaintiff for the land in dispute and one hundred dollars damages. After the entry of judgment, which was preceded by a motion for a new trial that was denied, the defendant appealed upon the following grounds:

1. Because his honor, the presiding judge, erred in allowing

the plaintiff, against the objections of the defendant, to testify to transactions between herself and Robert H. Wardlaw, deceased, to wit: that she and her husband purchased land from Mr. Wardlaw; that they got from him papers about the land and receipts for money, and that she paid him part of the purchase money, and worked for him to make payments on said land.

2. Because his honor, the presiding judge, erred in permitting the plaintiff, against the defendant's objection, to testify that her husband, Samson Rapley, allowed the title to said land made to her, the written transfer of the contract to purchase being the best evidence.

3. Because his honor erred in admitting, against defendant's objection, proof by the plaintiff and her husband of a verbal assignment of the contract to purchase said land, and in holding that said assignment need not be in writing.

4. Because his honor erred in admitting in evidence, against defendant's objection, the receipts for money paid on said land, the same not having been properly proved.

5. Because his honor, the presiding judge, erred in admitting in evidence, against defendant's objection, the receipts referred to, said receipts being to different parties, and there being no evidence that they related to the same land, or to the land in dispute.

6. Because his honor, the presiding judge, erred in admitting, against defendant's objection, the testimony of W. C. Wardlaw in answer to plaintiff's fourth interrogatory, that "the Wardlaw home tract, in the town of Abbeville, was sold to A. L. Gillespie"—the deed being the best evidence.

7. Because his honor, the presiding judge, erred in admitting, against the defendant's objection, the testimony of W. C. Wardlaw, given in answer to plaintiff's fifth interrogatory, that the tract of land sold to A. L. Gillespie did not embrace all of the homestead of R. H. Wardlaw, and that several persons, naming them, had previously bought portions of it, said testimony tending to vary the terms of the Gillespie deed, and the deeds to portions sold off being the best evidence.

8. Because his honor erred in overruling defendant's objection to plaintiff's sixth interrogatory propounded to W. C.

Wardlaw, because it is leading, and because the deed is the best evidence.

9. Because his honor erred in overruling defendant's objection to plaintiff's seventh interrogatory propounded to W. C. Wardlaw, because it was an effort to vary the terms of the deed to Gillespie, and because the testimony sought to be introduced was irrelevant.

10. Because his honor erred in overruling defendant's objection to plaintiff's eighth interrogatory to W. C. Wardlaw, because the testimony sought was irrelevant.

11. Because his honor, the presiding judge, erred in allowing the witness, Samson Rapley, to testify, against the objection of defendant, to transactions between the plaintiff and Robert H. Wardlaw, deceased, to wit: that Mr. Wardlaw put the plaintiff in possession of the land, the alleged contract to purchase having been made between himself and Mr. Wardlaw, and he having had an interest.

12. Because his honor erred in allowing the plaintiff, against the objection of the defendant, to put in evidence and explain to the jury the alleged "sketch of a plat" attached to the deed of W. C. Wardlaw, executor, to Rachel Rapley, without proof of the same, and in holding that the defendant had not the right to object.

13. Because his honor erred in sustaining the plaintiff's objection to the following question asked R. J. Robinson: "Were there any marks there to show that any persons other than those you have mentioned, Grey and others, ever got any of this land?"

14. Because his honor, the presiding judge, erred in overruling defendant's motion for a non-suit: 1st. Because the alleged assignment or transfer to the plaintiff of the contract between Samson Rapley and Robert H. Wardlaw for the purchase of the said land, was not in writing, and was within the statute of frauds. 2d. Because the rights of the plaintiff, as between her and the defendant, are fixed by the contract between Samson Rapley and Robert H. Wardlaw for the purchase of said land, as it stood at the time of defendant's purchase. 3d. Because the alleged contract between Samson Rapley and

.Robert H. Wardlaw for the purchase of said land and part performance thereof, was not sufficient to sustain an action for specific performance, and plaintiff's equity cannot prevail. 4th. Because there was no evidence of the location of the said land under the alleged contract to purchase.

15. Because his honor erred in charging the jury as follows : "I say that the main question is, were the two acres in dispute included in the Gillespie conveyance and purchase? He purchased 200 acres, more or less, bounded by certain named persons and *others*. If these two acres were not in the Gillespie purchase, then it was not conveyed to the defendant, * * * and the plaintiff would be entitled to prevail in this action;" and in failing to charge that the Gillespie conveyance and purchase included all the land covered by the descriptions in the deeds and plat accompanying the same.

16. Because his honor, the presiding judge, erred in charging the jury, that if "the plaintiff or her husband for her" were "in possession of these two acres at the time the defendant and those under whom he claims purchased, * * * the defendant could not occupy the position of purchaser for valuable consideration without notice," and in failing to charge that such possession must be actual, open, notorious, and unequivocal *at the time the defendant* purchased.

17. Because his honor, the presiding judge, erred in refusing to charge the defendant's third and fourth requests to charge, which are as follows : "3d. That notice to the Abbeville Land, Loan, and Improvement Company of plaintiff's claim through its president, J. Allen Smith, was not notice to an individual stockholder who purchased from said company without receiving notice himself. 4th. That if this defendant purchased from the Land, Loan, and Improvement Company without notice of the plaintiff's claim, and paid the purchase money and took title, he will be protected in his purchase, although the said Land, Loan, and Improvement Company, in which he is a stockholder, had notice of the claim of the plaintiff."

18. Because his honor erred in charging the jury : "If the testimony satisfies you that Mr. J. Allen Smith, the president of the Land, Loan, and Improvement Company, had notice of

the claim of Rachel Rapley and her husband, and that Mr. Klugh was secretary of the company, and was present at that meeting when the resolution was passed that they would convey this land to Mr. Klugh and Mr. J. Allen Smith without warranty, that would be sufficient to put him upon notice, and was sufficient to charge him with notice."

19. Because his honor, the presining judge, should have charged the jury as requested in defendant's sixth request to charge, which is as follows: "That notice to J. Allen Smith of plaintiff's claim, before he and this defendant purchased said land, was not notice to this defendant, and if he purchased without notice, the plaintiff cannot recover."

20. Because his honor, the presiding judge, should have charged the jury as requested in defendant's seventh request to charge, which is as follows: "That the plaintiff must by testimony make the location of the land claimed sufficiently plain to enable the court to have the same located and its judgment carried out, should there be a judgment for the plaintiff, and if this is not done, the plaintiff cannot recover."

21. Because his honor erred in charging the jury, "that the question of location is a question of fact for you, and you must determine whether or not this land in dispute has been sufficiently located to enable the plaintiff to recover in this action," and then failing to instruct them what constitutes sufficient location.

22. Because his honor erred, when referring to the descriptions of the Wardlaw land contained in the deeds, in charging the jury as follows: "The descriptions show that it was bounded by so and so and others. That is an important matter for you to consider, when you come to consider the whole case;" and then failing to charge the jury in what respect it was important and what was the effect of it.

23. Because his honor erred in charging the jury as follows: "If you conclude that she was wilfully and wrongfully turned out of her land, then, if you conclude to do so, you can give her such damages as you think she is entitled to, but not unless she was turned out of her land wantonly, wilfully, and maliciously and recklessly;" whereas he should have charged that

exemplary or punitive damages could not be recovered in an action of this kind.

24. Because his honor having charged the jury that they could not give exemplary damages unless the plaintiff was turned out of her land wantonly, wilfully, and maliciously and recklessly, he should have granted defendant's motion for a new trial, there being no evidence that she was dispossessed in such manner, and the damages found being largely in excess of the actual damages proved.

At the hearing before us, it having been suggested that Rachel Rapley had died since this appeal had been taken, an order was passed by this court, with the consent of all the parties to the appeal, by which Lee Rapley and Adolphus Rapley, as the devisees under the will of Rachel Rapley, deceased, and W. E. Bell, as the executor of her will, were substituted for the said Rachel Rapley as parties in her stead, such order stipulating that the same should be without prejudice to any written agreement heretofore made between counsel in this cause, and that all such agreements in writing should be confirmed.

The grounds of appeal are numerous, some twenty-four exceptions. We will first examine the first and eleventh exceptions, involving, as they do, the construction of section 400 of the Code of this State. The questions now presented were raised in the examination of Samson Rapley, who was the husband of the plaintiff, Rachel Rapley, and, also, who had made the contract with Robert H. Wardlaw for the purchase of the two acres of land now in controversy. Mr. Wardlaw, in his lifetime, executed no deed, but received two payments in part of the purchase money, which payments were evidenced by his receipts therefor in writing, and put the said Samson Rapley in possession of the land. The plaintiff desired this testimony. Also, the plaintiff, Rachel Rapley, desired to testify in regard to communications and transactions with the said Robert H. Wardlaw. Defendant promptly interposed his objection to such testimony, on the ground that it was obnoxious to the section of our Code (400) now being considered. Section 399 of the Code provides: "No person offered as a witness shall

be excluded by reason of his interest in the event of the action,"
and thereby *a general rule* was established; but, as was said by
Chief Justice Moses in *Guery, trustee,* v. *Kinsler,* 3 S. C., 423,
section 400 "was to guard against a mischief which, but for its
enactment, would have been the consequence of the section
(399) which precedes it. * * * While the living, of sane
mind, were able to answer for themselves, there was no one to
protect the estate of the dead, the insane, or the lunatic, from
the effect of testimony derived from their alleged declarations,
without fear of direct contradiction."

Section 400, which is in restriction of the general rules, reads
as follows: " * * * *Provided, however,* That no party to the
action or proceeding, nor any person who has a legal or equita-
ble interest which may be affected by the event of the action or
proceeding, nor any person who, previous to such examination,
has had such an interest, however the same may have been
transferred to or come to the party to the action or proceeding,
nor any assignor of any thing in controversy in the action, shall
be examined in regard to any transaction or communication
between such witness and a person at the time of such examin-
ation deceased, insane or lunatic, as a witness against a party
then prosecuting or defending the action as executor, adminis-
trator, heir at law, next of kin, assignee, legatee, devisee or
survivor of such deceased person, or as assignee or committee
of such insane person or lunatic, when such examination, or
any judgment or determination, in such action or proceeding,
can in any manner affect the interest of such witness, or the
interest previously owned or represented by him. * * *"

Many cases may be found in our reports where this court has
construed this last section. In every case it has been held to
be in restriction of the general right to testify, and at the same
time this court has recognized its inability to extend it beyond
the classes expressly denied the right to testify. As was said
in *Guery, trustee,* v. *Kinsler, supra,* "When, however, an excep-
tion is made by words of description, including only persons
referred to as occupying particular relations, it would be trans-
cending our authority and usurping the functions of another
department, to include others who, though they may be within

the mischief, have not been so recognized and protected by the enactment." It becomes necessary, therefore, when the competency of a witness is to be determined by the provisions of section 400 of the Code, that it shall appear that the witness objected to shall be shown to belong to one of the interdicted classes named in this statute. The only possible class to which these witnesses can be referred to therein, is that of "*assignee*." Is it true, that the defendant to the action is in any sense an "assignee" of Robert H. Wardlaw, deceased? Klugh, the defendant, did not purchase and receive his title from Robert H. Wardlaw; his title is derived from J. Allen Smith, who was the *alienee* of the Abbeville Building, Loan, and Investment Company. This corporation purchased from one Gillespie, and he, in turn, purchased from William C. Wardlaw, as executor, &c., of Robert H. Wardlaw.

Under the decisions of this court in the cases of *Jones* v. *Plunckett*, 9 S. C., 392, and *Cantey* v. *Whitaker*, 17 *Id.*, 527, it could not be held that the defendant here was entitled to be classed as an "assignee," within this provision of the Code. In the case last cited, Mr. Justice McGowan said : "But whilst, as it seems to us, the plaintiff *as alienee* is within the mischief intended to be remedied by the exception, she is not within the express terms. She is the third or fourth alienee of the land from the deceased person, but she is neither 'executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor,' according to the terms of the exception, which *enumerated* those intended to be excepted; and this court, whose only duty it is to *declare* the law, cannot amend it so that its terms will embrace a case, which we may suppose to be within the principle upon which the law was founded, but not within its express terms." The cases of *Standridge* v. *Powell*, 11 S. C., 519 ; *Robinson* v. *Robinson*, 20 *Id.*, 567 ; *Monts* v. *Koon*, 21 *Id.*, 110, 112, and *Moffatt* v. *Hardin*, 22 *Id.*, 25, cited in appellant's argument, have each been examined by us, and it is found that no principle upheld in any of those cases refers to or antagonizes the position here taken by us. These exceptions must be overruled.

We will next consider exceptions two and three. The appel-

lant lays stress upon the decision of this court of *Mims* v. *Chand-ler*, 21 S. C., 494, where it was held that the contract of purchase having been made by Mims, the husband, he was entitled, in the action for specific performance of such contract, to have the title made to himself, rather than to allow Chandler, of his own motion, to elect to make such title to the wife of Mims. The court was clearly right in its decision in that case. So, in the present case, we would hold, if there were a contest between Dr. W. C. Wardlaw, as the executor of Robert H. Wardlaw, deceased, and Samson Rapley, when Dr. Wardlaw claimed the right to convey the lot of land to Rachel rather than Samson. But we are confronted with no such state of facts. It is Samson who, after having completed his contract by paying every dollar of the purchase money, requires such deed made to his help-meet, his wife, and we hear no complaint of Samson, or his heirs at law, or his creditors, at what Samson has himself caused to be done. We know of no law which forbids a purchaser, under a parol contract to purchase, with possession being delivered to him of the land in question, and after he has paid to the utmost farthing the purchase money, having the deed made to his wife, if the rights of his creditors are not contravened thereby. The decisions quoted by the appellant (*Blackwell* v. *Ryan*, 21 S. C., 121; *Watson* v. *Child*, 9 Rich. Eq., 129; *Roberts* v. *Smith*, 21 S. C., 461; *Massey* v. *McIlwain*, 2 Hill Ch., 425; *Adickes* v. *Lowry*, 12 S. C., 97), do not in any manner impinge upon the view here expressed. These exceptions are overruled.

Exceptions four and five relate to the admission in testimony of two receipts given by Robert H. Wardlaw to Samson Rapley and his wife Rachel, for money paid by them on the parol contract of purchase of the land now in controversy. This court, in the case of *Moffatt* v. *Hardin*, 22 S. C., 9, held: "A receipt is not one of those solemn papers in writing as to which parol evidence is not admissible, but is always capable of explanation." These parties, Samson Rapley and Rachel, his wife, presented, when they were testifying under oath, two receipts, which they said were given to them by Mr. Robert H. Wardlaw, and two given by his son, Dr. Wm. C.,

as his executor. They testified that the parties themselves gave them these receipts when they paid the money. There was no error here.

Now let us examine exceptions 6, 7, 8, 9, and 10, relating as they do to appellant's objections to the answers made by Dr. Wardlaw to plaintiff's 4th, 5th, 6th, 7th, and 8th interrogatories. Dr. Wardlaw had made a deed to A. L. Gillespie for what was known as the "Robert H. Wardlaw homestead," containing 200 acres, *more or less,* bounded by lands of certain named individuals and *of others* whose names were not given. The purpose of these interrogatories was to obtain from this witness the names of the other persons who were referred to in his deed, but whose names were not then given. This witness had a perfect right in this testimony to fully identify the land sold as the "Robert H. Wardlaw homestead." Not only so, but he could give the names of the "others" whose lands were bounded by the lands he conveyed. The only restriction upon his testimony in regard to these matters was, that he could not contradict or vary the terms of his contract with A. L. Gillespie, which contract was expressed in the deed of conveyance from Wardlaw to Gillespie. As was said in *Barkley* v. *Tarrant,* 20 S. C., 578: "There is no doubt of the general rule that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written agreement. This is a salutary rule, necessary to prevent frauds and perjuries, and to protect the real intention of parties; but if applied without discrimination, it may be found to promote the very things it was intended to prevent. The rule has special reference to the words used in the instrument, and the intention of the parties; as for example, in the familiar case of a latent ambiguity. Mr. Greenleaf says: "It is thus apparent that the rule excludes only parol evidence of the language of the parties contradicting, varying or adding to that which is contained in the written instrument; and this, because they have themselves committed to writing all which they deemed necessary to give full expression to their meaning, and because of the mischiefs which would result if verbal testimony were in such cases received. But when the agreement in writing is

10—40

expressed in short and incomplete terms, parol evidence is admissible to explain that which is *per se* unintelligible, such explanation not being inconsistent with the written terms. 1 Greenl. Evid., § 282.''

The deed of Dr. Wardlaw to Mr. Gillespie was expressed in incomplete terms—the ''Robert H. Wardlaw homestead,'' lands ''of others'' as boundaries—hence, under the wise rule just enunciated, this witness could testify on these points.   Let the exceptions be overruled; but before leaving this branch of the case, it is only just to ourselves to say that these principles of law are not inconsistent with those held in the cases of *Senterfit* v. *Reynolds*, 3 Rich., 129 and 130; *Lee* v. *Fowler*, 19 S. C., 608; *Cathcart* v. *Chandler*, 5 Strob., 19; *Stucky* v. *Clyburn*, Cheves, 186, and 1 Greenl. Evid., § 86, cited by the appellants.

The twelfth exception has reference to what was known as a ''sketch of a plat'' which was attached to the deed of conveyance from Dr. Wm. C. Wardlaw, as executor of R. H. Wardlaw, deceased, to Rachel Rapley.  Such ''sketch of a plat'' was not made by any surveyor; it was a diagram of the premises prepared by Dr. Wardlaw, and by him attached to the deed before its delivery.   The deed was introduced in evidence without objection, and when defendant, appellant, objected to any reference to such diagram, the judge ruled that he could not object to it—that it was a part of the deed.   Inasmuch as it was used at the trial as an illustration, and not as binding any one (for it had no courses or distances on it), we suppose the Circuit Judge viewed it very much as any diagram made by an ordinary witness (we mean by ''ordinary witness'' one who was not an expert, as a surveyor would be,) would while on the stand, indicating his impressions of the form of a house, direction of a road, or, it may be, the way a piece of land appeared to the witness as to its direction from any given place or road, &c.   With this view, we cannot see that any harm could have resulted to any one from its consideration. Let the exception be overruled.

The thirteenth exception complains that the Circuit Judge erred in not allowing Mr. R. J. Robinson, who is a surveyor, to answer a question in this form propounded by appellant:

"Were there any marks there to show that any persons other than those you have mentioned, Grey and others, got any of this land?" The form of this question is objectionable, because it was leading. Independently, however, of this objection, it was irrelevant, for it was no part of the issues here presented. Besides, this witness had fully explained the McCord plat, and all that he saw or could find in connection with the lines therein designated, so that, after all, his opinion as to facts was sought by the question, and we are, under all these circumstances, inclined to regard the course of the judge as proper. The exception is overruled.

We now come to consider the fourteenth exception, covering, as it does, the alleged error of the Circuit Judge in refusing the motion for a non-suit, in its several phases. (*a*) The alleged contract between Samson Rapley and Robert H. Wardlaw was not in writing, and was within the statute of frauds. We cannot agree with the appellant, that because there was no written contract between these parties, therefore, the statute of frauds would apply. To a certain extent, there was an acknowledgment by Mr. Wardlaw in writing of this contract, for he specifies in the receipts he gave, and which he signed, that there was such a contract. Besides all this, he received a considerable part of the purchase money, and at the same time placed the bargainer in possession. We apprehend if he had lived and refused to perform his contract, Rapley could have forced him to do so. This is a fair test of the applicability of the statute of frauds. We think Rapley showed more than did the plaintiff in *Mims* v. *Chandler, supra*, where specific performance was adjudged. (*b*) Appellant insists that he, having purchased before the contract was actually carried into effect, is entitled to hold his rights as against Rapley (Samson), and that at that time Samson Rapley could not have had specific performance of his contract. We hold that Rapley had this right of specific performance throughout his contract, subject to be defeated if he failed to pay the entire purchase money. If, after 1886, and before defendant purchased, Mr. Robert H. Wardlaw no longer had the power to alienate this land, so as to defeat the rights therein that he, Mr. Wardlaw, had created

in Samson Rapley, certainly after his death the executor of Mr. Wardlaw had no such power. And if this be true, the appellant is helpless, so far as this matter is concerned, for he only has the executor's deed. However, before leaving the consideration of this question of non-suit, it would have been difficult to defend the Circuit Judge, if he had granted this motion, if there was testimony on the material issues raised by the pleadings. This exception is overruled in all its phases; for c (3) and d (4) were answered in what was said of a.

The fifteenth exception complains of the judge's charge as to the Gillespie deed, and then complains of what he ought to have charged and did not. So far as the latter complaint is concerned, it is the appellant's fault if the judge ought to have charged and did not so charge, as he alleges, for the appellant never requested any such charge; and we have, over and over, held that if an appellant omits a request to charge, it is his misfortune and not the fault of the judge. Now, what did the judge charge that is complained of? Here is that part of his charge: So, Mr. Foreman and gentlemen, I say that the main question is: Were the two acres in dispute included in the Gillespie conveyance and purchase? He purchased 200 acres, *more or less*, bounded by certain named persons and *others*. If these two acres were not in the Gillespie purchase, then it was not conveyed to the defendant, for he only purchased the land conveyed to Gillespie, and by him conveyed to the Abbeville Land, Loan, and Investment Company, and the plaintiff would be entitled to prevail in this action. But if it was included, then the defendant would be entitled to prevail, unless the testimony satisfies you that at the time of his purchase he had notice of the plaintiff's claim." This charge of the judge most admirably presents the issues in this action to the jury. It is in exact accord with the admitted and uncontroverted facts of the pleadings and the testimony. The exception is overruled.

Let us now attend to the question embraced in the sixteenth exception. This relates to the judge's charge. Before quoting the language referred to, it may be of moment to state, that defendant sought to protect himself not only

by denying that plaintiff had title, but in case he should fail there, he set up the defence of purchaser for a full and valuable consideration without notice of plaintiff's rights. Therefore, the judge, without any request for such a charge, felt it his duty, as it was, to explain that issue to the jury, and he did so in these words: "So the question is, was the plaintiff, or her husband for her, in possession of these two acres at the time the defendant, and those under and through whom he claims, purchased? If so, then the law would charge them with constructive notice of the plaintiff's claim, and the defendant could not occupy the position of purchaser for valuable consideration without notice." This seems to us a fair presentation of the law. Appellant complains that he ought to have enlarged his charge somewhat by stating that such occupation was open, actual, notorious, and unequivocal. It is his (appellant's) fault if the judge did no more, for he made no request, either then or at the close of the charge, as the judge distinctly invited counsel to do. The exception must be overruled.

In the 17th and 18th exceptions the appellant raises the question whether the judge did not err in refusing to charge his third and fourth requests: "*Third.* That notice to the Abbeville Land, Loan, and Improvement Company of plaintiff's claim, through its president, J. Allen Smith, was not notice to an individual stockholder who purchased from such company without receiving notice himself. *Fourth.* That if this defendant purchased from the Land, Loan, and Improvement Company without notice of the plaintiff's claim, and paid the purchase money and took title, he will be protected in his purchase, although the said Land, Loan, and Improvement Company, in which he is a stockholder, had notice of the claim of plaintiff." The judge charged: "Well, under certain circumstances, I would charge you that these propositions might be true; but if the testimony satisfies you that Mr. J. Allen Smith, the president of the Land, Loan, and Improvement Company, had notice of the claim of Rachel Rapley and her husband, and that Mr. Klugh was secretary of the company, and was present at that meeting when the resolution was

passed that they would convey this land to Mr. Klugh and
Mr. J. Allen Smith, *without warranty,* that would be sufficient
to put him upon notice, and it was sufficient to charge him
with notice."

This presents a delicate question, and one that has enlisted
very great consideration by the courts of the country. The
judge, under the issues, did not feel called upon to charge in
the form the appellant presented his requests, conceiving very
justly that if he charged upon the requests in the exact form in
which they were framed, he would be charging upon an abstract
question of law in no wise connected with the issues made
squarely in this case; and this no judge is required to do.
Hence he framed his charge to apply to the issues involved
here, and we are now prepared to pass upon their consonance
with the law. In the separate opinion of the present Chief
Justice of this court, in the case of *First National Bank* v. *An-
derson & Co.*, 28 S. C., 150, he points out very clearly the injus-
tice of imputing to a bank the knowledge possessed by one of
its mere stockholders. It is true, the question there involved
was the discount by a bank of a negotiable instrument, before
maturity, in the ordinary course of its business. In such a
case, it would be unquestionably a great wrong, and prove a
serious blow to the business interests of the country, to hold
otherwise. That case does not, however, as it ought not to
have done, for such question was not there involved, pretend
to touch the question of the effect of such knowledge by a
stockholder of a bank when a meeting is called to pass upon a
question, and he is present and takes part in the solution of
that question. So much for a stockholder, under the hypothe-
tical case.

All corporations act by agencies. Amongst these agencies
are the officers. We apprehend the law makes a distinction
between the mere stockholders and the officers of a corporation.
The responsibility of the latter is, and ought to be, more strin-
gent. So we see in the later case of *Akers* v. *Rowan*, 33 S. C.,
451, where there was an effort to bring home to the bank a
knowledge of one Robbins' insolvency through the knowledge
thereof imputed to the solicitor of the bank, this distinction is

recognized; for in this case the general rule was recognized that notice to the agent is notice to the principal. The bank was exonerated from the responsibility of the knowledge of its agent (solicitor and director), because such knowledge of its agent was not acquired while engaged in business for the bank, but was acquired while acting as the solicitor of Robbins himself, thus creating an exception to the general rule, and this exception was sustained by one of the highest authorities in this country, which are fully set forth in that opinion. We have, therefore, to begin with this as a general rule, that all the knowledge of an agent is imputed to his principal, and, of course, there are exceptions to this as to all general rules. A recent writer, as set forth in the note to the case of *Fairfield Bank* v. *Chase*, 39 Am. Rep., 331, has thus set forth the exceptions: "1. What the agent has forgotten entirely or may have forgotten during the agency. 2. What he could not tell his principal, *e. g.*, professional confidences. 3. Facts which the previous conduct of the agent makes it certain he will conceal."

In the case at bar, it was admitted that Mr. J. Allen Smith was the president of the corporation, the Land, Loan, and Improvement Company, and that the defendant, appellant, Mr. Klugh, was its secretary. It was charged that Mr. Smith knew of Rapley's claim to, and actual possession of, these two acres while he was negotiating in behalf of his corporation, with Mr. Gillespie for the purchase of the "R. H. Wardlaw homestead," and testimony was introduced on this issue. It was proved that by a resolution of the corporation, the Land, Loan, and Improvement Company, after its purchase from Gillespie, the sale of such lands to said Smith and Klugh were directed to be made without warranty of title, and that Mr. Klugh was present as secretary at that meeting of the corporation, and recorded such resolution on its minutes; and, further, that such corporation did actually convey said lands to them in pursuance of such resolution. Wherefore, when the judge made his charge quoted above, he addressed himself to an enunciation of the law applying to the state of facts bearing on these issues; and after reflection, we are not dissatisfied with his conclusion. The exceptions are, therefore, overruled.

Nor are we dissatisfied with the action of the judge, as complained of in the 19th exception. The appellant had requested him to charge, in his sixth request: "That notice to J. Allen Smith of the plaintiff's claim, before he and this defendant purchased said land, was not notice to this defendant, and if he purchased without notice, the plaintiff cannot recover." To which the judge replied: "That is, if it was just the individual notice to J. Allen Smith, I charge you that." From these words, as quoted, the judge pointed out a difference in notice to J. Allen Smith as an individual and as president of the corporation. It seems to us, that under the principles of law announced in the branch of this opinion just preceding that now under consideration, this charge of the judge was, if anything, too favorable to the defendant, appellant.

Exceptions 20 and 21 relate to the judge's refusal to charge defendant's seventh request, which was: "That the plaintiff must by testimony make the location of the land claimed sufficiently plain to enable the court to have the same located and its judgment carried out, should there be a judgment for the plaintiff, and if this is not done, the plaintiff cannot recover." The response of the judge was in these words: "As a general proposition of law, that is true, but the question of location is a question of fact for you, and you must determine whether or not this land in dispute has been sufficiently located to enable the plaintiff to recover in this action. If it has, why the court will certainly carry out its judgment, if you find that state of facts." Thus it appears that the judge was careful not to invade the province of the jury, in their duty under the law, without any expression of opinion thereon by the judge, to find what facts were established by the preponderance of the testimony. We are unable to find any error here. The exception is overruled. Under the foregoing views, exception 22 must be overruled.

Lastly, we will consider the 23d and 24th exceptions, which relate to so much of the judge's charge as refers to exemplary damages. The judge charged: "Now, as to the question of damages. In case you come to the conclusion that the plaintiff is entitled to recover, she is entitled to recover

damages from the defendant for the withholding the possession of these lands. And you are to take into consideration the value of the timber cut upon the land, and also the use of the land for the time the party was kept out of them; and you will take into consideration, also, whether or not the cutting of the timber off of this land has damaged the plaintiff. You will give her such damages as will compensate her for being deprived of her land in its cultivation; and *if you conclude that she was wilfully and wrongfully turned out of her land, then, if you conclude to do so, you can give her such damages as you think she is entitled to, but not unless she was turned out of her land wantonly, wilfully, and maliciously and recklessly"* (italics ours).

This court held, in *Bonham* v. *Bishop,* 23 S. C., 105: "A verdict is the compound result of the legal instructions given to the jury by the court, and of their findings of fact applied to the legal principles laid down for their guidance, and if there is error in the instructions, then there is necessarily error in the judgment." We are still satisfied with this enunciation of the law, but we apprehend that if it is apparent from the case here presented, that a slight error by the judge in his charge has in no way contributed to the verdict of the jury, in the interest of the proper administration of justice in our courts, such a slight error of the judge should not be allowed to vitiate the judgment by having an order entered for a new trial. This court owes it as a contribution to the public welfare, that is so largely conserved by having justice administered in our courts with reasonable speed, and when conclusions are reached by judgments therein, that light, slight, and unimportant errors which may have been committed during the trial of a cause, shall be esteemed as cured by the verdict. The Code of this State inculcates this doctrine, and the wisdom derived from long experience sanctions it. We are aware that in the cases of *Spellman* v. *Railroad Company,* 35 S. C., 475; *Samuels* v. *Railroad Company, Ibid.,* 493, and *Cobb* v. *Railroad Company,* 37 *Id.,* 194, this court has endeavored to lay down a general rule to govern cases of exemplary damages, by requiring that the complaint must contain allegations to support such exemplary damages. We still maintain the doctrines there

set forth; but in the case at bar it is so manifest that the charge of the judge, a portion of which, accidentally,·no doubt, contravened in a measure these doctrines, has really produced no mischief, that we are unable to get our consent for this slight omission by the judge to order a new trial.   In the case of *Woody* v. *Dean,* 24 S. C., 503, this court held: "An erroneous instruction to the jury which could have made no possible difference in their verdict, is not ground for a new trial." In the case at bar, it was undisputed that defendant had taken possession of the land in question for three years, had cleared up one acre of timbered land lying within the limits of the town of Abbeville, had sawed up and used for his own purposes much of said timber, and that for firewood the timber was worth $1.50 a cord.   The verdict only allowed $100 damages.   We do not feel justified in granting a new trial for this slight error in the judge's charge, with the conclusion forced upon our minds that it in no wise contributed to the verdict rendered, and the exceptions must, therefore, be overruled.

Besides all this, we are not satisfied that the allegations of the complaint, properly construed, are insufficient to warrant the testimony as to *manner* in which the plaintiff was ejected. Moreover, the testimony as to exemplary damages not being objected to when it was offered, the complaint, even if defective, might have been amended so as to correspond with the proof.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.