BICKLEY v. COMMERCIAL BANK.

1. CERTIFICATES OF DEPOSIT—EVIDENCE.—In action to recover from a bank the amount called for in a certificate of deposit signed by the president in his individual name as "Manager," and after proof that the president of the bank was authorized to receive money on interest, it was competent for plaintiff to prove by a witness that he had been authorized by the president to solicit interest-bearing deposits.

2. IBID.—IBID.—PAROL EVIDENCE—CASE CRITICISED.—In action against a bank on a certificate of deposit given by the president of a bank at the banking house, but signed by him in his individual name, with the word "Manager" superadded, the certificate nowheres mentioning the name of the bank, and under allegations that the president had told plaintiff at the time that the deposit was received into the bank, and under testimony showing that such president had authority to issue interest-bearing cer-

tificates of deposit, and that the bank had recognized others so issued, the plaintiff may prove by parol testimony that this certificate was the contract of the bank. This case distinguished from the case of Bickley *v.* Commercial Bank, 39 S. C., 281.

3. IBID.—AGENCY—NONSUIT.—There being some testimony upon the issue of agency on the part of the bank president when he signed this certificate, a nonsuit would not have been proper.

4. IBID.—IBID.—Third parties dealing with a bank, are not to be prejudiced by the mis-statement by an officer of the bank, of the proper designation of the office which gives to him the relation of agent of the bank.

5. EVIDENCE—COMMISSION—CROSS-INTERROGATORIES.—Error will not be declared in the refusal by the trial judge to exclude cross-interrogatories in a commission to take testimony, which inquired of the witness whether he had not previously testified in another cause, as set forth in voluminous extracts from such former testimony.

6. EXCEPTIONS.—Objection cannot be raised by exception to counsel's comments to the jury on the testimony, where no ruling upon the matter was had or asked for in the court below.

7. CERTIFICATES OF DEPOSIT—BANK.—The modification in this case of a requested charge, did not impose upon the bank a liability on a certificate signed by its president as "Manager," in the absence of fraud or misrepresentation.

8. EXCEPTIONS based upon a misapprehension of the judge's charge, overruled.

9. CHARGING JURIES—BANK PRESIDENT.—In charging as requested, that the bank would not be liable on this certificate of deposit, if the president took plaintiff's money and deposited it to his own credit as manager of another corporation, unless the bank held out its president as authorized to receive deposits, the defendant was not prejudiced by the additional charge, that if such president had not been president, the plaintiff could have sued the bank only in a Court of Equity.

10. IBID.—IBID.—REPRESENTATIONS.—Where a bank authorizes the establishment of a savings department, and the payment of interest on deposits therein, but charges no official with this department of its business, it is liable to a depositor, who paid money into the president's hands with instructions to so deposit it on the president's representation that he was authorized to receive the money, and which was misappropriated.

11. CHARGING JURIES—FACTS.—There was no error in refusing a request to charge, which involved an expression of opinion on the facts.

12. NEW TRIAL—AGENCY.—There was no error in refusing a new trial, which was moved on the ground that there was no testimony to show that the president of the bank was authorized to sign his name as "Manager," or that he intended by such designation to bind the bank, when there was

34—43

testimony to show that in this matter the president was the agent of the bank.

MR. CHIEF JUSTICE MCIVER, *dissenting*.

Before FRASER, J., Richland, April, 1894.

Action by J. D. Bickley against the Commercial Bank of Columbia, S. C.

*Messrs. Lyles & Muller*, for appellant.

*Messrs. J. S. Verner* and *Abney & Thomas*, contra.

April 15, 1895.    The opinion of the court was delivered by

MR. JUSTICE POPE.    This action has been before this court on appeal once before.    The decision may be found in 39 S. C., 281, and by that decision a new trial was ordered.    The complaint in the case was in three paragraphs, whereof the first alleged the corporate character of the defendant; the second alleged that on the 21st day of October, 1890, the plaintiff deposited with the defendant, and the defendant received from the plaintiff on deposit, the sum of eight hundred dollars, which the defendant agreed to pay to the plaintiff's order one year after said date with interest thereon at the rate of six per cent. per annum, payable semi-annually from said date; and the third alleged that said sum of $800, and the interest thereon, was now due by the defendant to the plaintiff; that demand had been made therefor, but the defendant refuses to pay the same or any part thereof.

When the cause reached the Circuit Court, a motion was made by the plaintiff for leave to amend his complaint.    This motion having been granted, the plaintiff served his amended complaint, wherein he retained the first two paragraphs of the original complaint, but having omitted the third paragraph, alleged as follows: "3. That before and at the time said sum of money was so deposited in said defendant bank by this plaintiff, one C. J. Iredell was the president of said bank, and the agent thereof to receive deposits, and issue interest-bearing certificates therefor, and, as such, advertised that said bank would receive deposits and issue interest-bearing certificates

as evidence of such deposits. 4. That the plaintiff, with knowledge of said advertisement, went to said bank's place of business on the 21st day of October, 1890, in the city of Columbia, S. C., for the purpose of depositing said sum of money, and made special inquiries of said Iredell with reference to said bank receiving deposits, and the rate of interest it allowed thereon, and the said Iredell represented to the plaintiff that he was authorized by said bank to receive deposits for it, and give interest thereon at the rate of six per cent. per annum, and induced this plaintiff to deposit his money in said bank. 5th. That the plaintiff, relying upon the representations so made by said Iredell, and believing that he was depositing his money in said bank, and that Iredell had the authority, as he represented, to receive the same, and relying upon the credit of said bank solely, and its ability to repay him, delivered the said sum of money to Iredell, who deposited it in said bank, and gave this plaintiff a certificate, of which the following is a copy: 'Columbia, S. C., October 21, 1890. I hereby certify that James D. Bickley deposited with C. J. Iredell, manager, eight hundred dollars, payable to his order, properly endorsed. It is agreed that said sum of money shall remain on deposit for one year from the date thereof, that interest on this amount shall be at the rate of six per cent. per annum, payable semi-annually. (Signed) C. J. Iredell, Manager.' 6. That after the plaintiff had parted with his money, and the same had been deposited in said bank by said Iredell, the president and agent of said bank as aforesaid, the said Iredell fraudulently induced this plaintiff to receive said certificate as the certificate and obligation of said bank, and was in proper form, and as good as a printed certificate of said bank; that it was valid and binding upon the bank, and it was responsible for it, and would pay the same; the plaintiff, relying upon such representation, and believing it to be true that the said paper was the certificate of the defendant, and was in proper form and valid, took the same. 7. That before the beginning of this action, and after said deposit was due and payable, the plaintiff presented said certificate to said defendant, in Columbia, S. C., for payment, and the same was refused by the then president, W.

G. Childs, who was the successor of said Iredell, upon the ground that said certificate was not the obligation of said bank, and that said bank was not responsible for it. 8. That said deposit was at the beginning of this action, and is now, in the possession of the defendant bank as the property and deposit of this plaintiff, and the plaintiff alleges that if the said certificate is not the obligation of said defendant bank, then this plaintiff was induced by the false and fraudulent representations of said Iredell, the president and agent of said bank, as hereinbefore alleged, to deposit the said sum of money with the said bank, and to receive the said certificate as the evidence thereof, and the said bank having now in its possession the said deposit so fraudulently received, is liable to the plaintiff therefor, and is now due the plaintiff thereon the sum of $800, with interest from the 21st day of October, 1890, at the rate of six per cent. per annum, payable semi-annually." And the plaintiff prayed for judgment for $800 and interest, and costs.

To this amended complaint the defendant bank interposed its answer, wherein, after admitting its corporate capacity at the times alleged, and that C. J. Iredell was its president at such time, denied each and every other allegation.

Thereafter at the spring term, 1894, of the Court of Common Pleas for Richland County, the action came on for trial before his honor, Judge Fraser, and a jury. After the plaintiff closed his testimony, the defendant moved for a nonsuit, which was refused. Defendant then introduced testimony, to which the plaintiff replied. Before the judge delivered his charge, certain requests to charge were made by defendant; some of these requests the Circuit Judge refused to charge and some were charged in a modified form. The jury having returned a verdict for the plaintiff, and after judgment was duly entered thereon, the defendant appealed from the same, and in his grounds of appeal he assails certain rulings of the Circuit Judge as to the competency of some testimony, also his refusal to grant the motion for nonsuit, also his action on requests to charge; and, finally, that he erred in failing to grant the motion for a new trial. We will consider these grounds of appeal in their natural order.

1. As to the alleged errors of the Circuit Judge in admitting certain testimony: (a) "Because the witness, T. J. Gibson, was allowed to testify, against the objection of the defendant, that he had been requested to solicit deposits for the defendant bank." Now the defendant admitted in its answer that Mr. Iredell was its president at the period of time when the plaintiff alleged he made the deposit in question. The production of its by-laws showed that the directors of the defendant bank had authorized the president to receive deposits and pay interest thereon. The duty of the president of any corporation is to enforce the directions of its board of directors, if they are legal. Hence, if the president of the bank saw proper to employ means such as those of a soliciting agent for deposits to obtain such an advantage, and if it would throw any light upon the question as to whether the bank sought to obtain deposits for which interest was to be paid, it seems to us that the testimony of Mr. Gibson was, in that view, competent. We, therefore, overrule this exception.

(b) Exceptions from *b* to *h*, inclusive (2 to 7, inclusive), raise the question whether it is competent by parol testimony to show that the contract sued on was the contract of the defendant bank. An exact copy of this alleged certificate of deposit is set out in the complaint already incorporated in this opinion, and, therefore, need not be reproduced just now. An inspection of that instrument will disclose the fact that the defendant's name nowhere appears there. But that it is in its body, and the signature thereto, the certificate of "C. J. Iredell, Manager." In the former decision of this court in this case, the court held: "The cases cited to show that a receipt may be explained by parol evidence, have no application, as the paper in question, an ordinary certificate of deposit, has none of the elements of a receipt, but, on the contrary, is more like an ordinary promissory note; for it is certainly an obligation to pay a specified sum of money at a time stated, with interest at a specified rate. In *Miller* v. *Austin*, 13 How., 218, a paper practically identical in form with this, was held to be a note upon which the endorser was held liable as in case of an ordinary note."

So that, as a beginning to this investigation, the character of this certificate is fixed. It will be remembered, that by the pleading of the plaintiff it is contended that this certificate of the deposit is that of the defendant, but the defendant denies this proposition. Thus an issue of fact is squarely presented. The plaintiff admits that the certificate is not signed by the president or cashier of the defendant bank as such officers, and, also, that there is no reference to the defendant bank in the body of the certificate or the signature thereto. He contends, however, that his money was paid to C. J. Iredell, who was then president of the bank, in the building devoted to the business of the bank; where its officers had their offices and their desks; where money was deposited in said bank; and that this money, after being paid over to C. J. Iredell, was by him at once paid into the bank; and that the certificate in question was written out by C. J. Iredell after he had paid over the money into the bank; and that when the plaintiff was handed the certificate so prepared by the said Iredell, he complained to him that it was not on the usual printed form of certificates of deposit, and to this remonstrance of the plaintiff, the said Iredell replied that such printed forms were out, but that the bank was responsible for the deposit and would pay it; that he contracted with Iredell as president of the defendant bank touching said deposit, and that the certificate issued to him was issued to him by said Iredell as president of the bank, and though signed by "C. J. Iredell, Manager," it is the certificate of the bank, and that he should be allowed to show such state of facts. It will be noticed that Iredell does not pretend that it is an obligation personal to himself; he styles the transaction as one with himself as "Manager."

For awhile in the history of this State, we apprehend it must have been owing to the strictness observed in the courts of law as opposed to that of equity—when the principal was disclosed in the obligation signed by the agent, a recovery could not be had against the principal thereon. *Fash* v. *Ross*, 2 Hill, 294, and some cases followed in its wake. However, in the case of *Robertson* v. *Pope*, 1 Rich., 503, is was settled that when the principal was disclosed in the obligation made by his agent, the

principal was in law responsible on the contract.  In *Tarver* v.
*Garlington*, 27 S. C., 107, the note sued on in that case was as
follows: "$460.  On the first day of November next, I promise
to pay Samuel J. Tarver, or order, four hundred and sixty
dollars, for value received, with interest from date, at the rate
of seven per cent. per annum.  Witness my hand and seal, this
March 22, 1864.  S. D. Garlington, Agent."  Action was com-
menced by Tarver against Mrs. Garlington and George F.
Young, alleging that the said note was made by them through
S. D. Garlington, as their agent.  The former did not answer,
but George F. Young appeared in the action and demurred on
the ground that the plaintiffs' complaint failed to state a suffi-
cient cause of action.  Under the rules for the construction of
pleadings, said Young thereby admitted the truth of the facts
as alleged in the complaint.  The Circuit Judge sustained the
demurrer, but this court on appeal reversed such judgment,
holding that Young having admitted that S. D. Garlington had
made the contract as his agent, would be held bound by the
same rule of law that governs those cases where the agent in
the contract itself discloses who his principal is.  And in the
opinion of the court it is intimated that there may be exceptions
to the rule that when the contract as written fails to disclose
who is the principal, no recovery can be had against such prin-
cipal thereon.  In the case of *Barclay* v. *Tarrant*, 20 S. C., this
court deemed the name of the payee in a sealed note, which
sealed note failed to disclose the name of any payee, to be
proved by parol testimony.  In the case of *Rapley* v. *Klugh*, 40
S. C., 134, this court allowed the terms the "R. H. Wardlaw
homestead" and "and others" in a deed to be proved by parol
testimony.  In the case of *Willis* v. *Hammond*, 41 S. C., 153,
this court held that when a written contract fails to express
the consideration, or uses terms requiring explanation to be
understood and applied, or is only a part of a general whole,
it is competent to supply the missing facts by evidence of all
the precedent oral agreements of the parties.

Now, in the case at bar, if you depend upon the contract—
certificate of deposit—which states that the plaintiff deposited
$800 with "C. J. Iredell, Manager," and is signed by "C. J.

Iredell, Manager," how can you ever learn of whom, or what, he, Iredell, is "manager?" It is true, sometimes it is held that the word "agent," or any other word implying agency, when added by the maker of a note, is treated as surplusage, and the contract is held to be that of the person signing his name to the obligation. But we apprehend that such a conclusion in a court of justice is always based upon the fact that no agency exists. Here the issue is squarely made by the plaintiff, that Iredell acted in the transaction for the defendant bank, while the defendant seeks to establish that Iredell acted in the transaction as the manager of a different principal than the bank, and that the plaintiff so understood at the time he accepted the certificate of deposit now in question. We are obliged to hold that parol testimony is competent in such a case to show for what principal Mr. Iredell signed such certificate as "manager." And that this question of fact is one as to agency, and must be passed upon by the jury.

But the defendant insists that this question has been decided adversely to the plaintiff by this court in its former decision in this case. It was for the purpose of showing how differently the pleadings now before the court were from those in the first hearing, that we reproduce the allegations of the amended complaint. Besides, the Chief Justice, who rendered judgment in the first hearing in this court of this case, was exceedingly careful to preserve the rights of the parties. At page 291, he said: "It is very possible that if the parol testimony in question had been offered to show of what or for whom C. J. Iredell was manager, it would have been competent (inasmuch as the terms of the paper did not disclose that fact) under the cases of *Mechanics' Bank of Alexandria* v. *The Bank of Columbia*, 5 Wheat., 326; *Baldwin* v. *Bank of Newbury*, 1 Wall., 234; *Ligon* v. *Irvine*, 1 Rich., 502; *DuPont* v. *Mt. Pleasant Ferry Co.*, 9 Rich., 255. But here the evidence was offered for no such purpose. On the contrary, it was offered for the purpose of showing that the contract upon which the plaintiff sued was with an entirely different person from the one named in the paper delivered to the plaintiff as evidence of said contract—the paper showing that the contract was made with C. J. Iredell, manager, while

the parol testimony objected to was intended to show that it was made with the chartered bank through its president, *and that, too, without the slightest evidence tending to show that the president had any authority whatever to make such a contract*, or had ever in any instance signed his name as manager of the chartered bank, or had in any way ever been designated as such" (italics ours). The testimony offered showed that in several instances the president received the money to be deposited in the defendant bank, gave certificates therefor bearing six per cent. interest thereon, payable semi-annually, and that the defendant bank *paid such certificates*. The by-laws of the bank showed that Mr. Iredell as president was authorized to receive deposits on interest. The testimony of Mr. Bickley and Mrs. Jumper tended to show that Mr. Iredell as president of the defendant bank held out to them his agency for the bank in their transactions with the bank touching this deposit of $800. These exceptions must be overruled.

The next division of the appeal comprehends the two questions relating to the denial of the motion for nonsuit. 1. The appellant suggests that, as the certificate of deposit negatives the idea of a contract between the plaintiff and defendant, and there being no proof of misrepresentation or fraud on the part of the defendant bank or any one for whom it was responsible in that respect, therefore, the motion should have been granted. The rule is fixed, that if there exists any competent testimony responsive to the issues in a cause, the action must be submitted to the jury, for it is no part of a judge's duty to decide upon the sufficiency of the testimony. When, therefore, it appears, as there appears in this cause, that the question of agency or no agency of the defendant in the certificate of deposit signed by "C. J. Iredell, Manager," is squarely presented by testimony thereon submitted by the plaintiff, the motion for nonsuit ought not to be granted.

2. Again, the appellant suggests that the presiding judge, in refusing the nonsuit, was controlled by the idea that the term "manager" was synonimous with "agent," and that this was error. The law wisely seeks substance and not form. It matters little how one, who is acting in a business mat-

ter for another who is his principal, characterizes such agency. The primal question is, in what capacity did he act? The technical name for such agent may be "president," "cashier," "teller," "manager," "agent," &c. But if, in the discharge of an authorized act for his principal, the person who acts for such principal mistakes or mis-states his technical name as to his capacity to act for his principal, such mistake or mis-statement will not be allowed to prejudice the rights of third persons against the principal. This is the principle of law we understand the Circuit Judge had in his mind when he used the language complained of. From this standpoint, the Circuit Judge did not err.

3. We may dispose of exception 10 in this connection; for it seems that while the testimony of defendant's witness, Mr. C. J. Iredell, was being taken by commission, the plaintiff in his cross-interrogatories 3, 5, 7, and 9, embodied page after page of questions of counsel and answers of this witness in another action pending in court; and now the appellant claims "that it was not competent in such manner to incorporate the evidence of the witness in another cause into this cause." It does not seem to us that we should lay down as law a rule which may tend to cripple a party who may wish on a cross-examination to show what the witness has sworn in another cause on the same matters, to test, it may be, his credibility. The Circuit Judge is wisely vested with considerable discretion in the examination of witnesses; but inasmuch as he did not view the matter complained of as the appellant does, we are not inclined to hold that the Circuit Judge was in error in this matter. This exception is overruled.

4. The eleventh exception complains that plaintiff's counsel were allowed to comment upon the said cross-interrogatories numbers 3, 5, 7, and 9, as the testimony of the witness, C. J. Iredell, after in his replies thereto he had not admitted or denied the same. Now in the "Case" we find not the faintest allusion to any objection by defendant's counsel to any matter embraced in the argument of plaintiff's counsel. The "Case" states: "At the conclusion of the arguments, the presiding judge delivered the following charge." Surely, at

this day, it is not necessary to say that this court will refuse to consider on appeal a matter to which the attention of the Circuit Judge was never called, or upon which he made no ruling one way or the other. This exception is overruled.

The third division of the grounds of appeal may be said to consist of that exception relating to the refusal of the Circuit Judge at the close of argument to dismiss the complaint.

3 The exception is in these words: "12. Because after the close of the testimony, in the argument of counsel, his honor, the presiding judge, refused the motion of defendant to dismiss the complaint, because the evidence had established that there was no cause of action on the part of the plaintiff against the defendant." In his argument, the defendant treats this twelfth ground of appeal as a motion for a nonsuit. It is usually the case, in jury trials, that a motion for nonsuit follows immediately after the close of plaintiff's testimony. The appellant lays stress upon the character of the certificate of deposit—the fact, as he urges, that by its very terms it negatives any contract between plaintiff and defendant, as his ground for this motion for nonsuit. Having already considered this matter in disposing of the eighth ground of appeal, we will content ourselves with the observation that we are still satisfied with the views there expressed. We overrule this exception.

The last division of appellant's exceptions will embrace those relating to the alleged errors of the Circuit Judge in disposing of the defendant's request to charge. The 13th exception

7 is as follows: "Because his honor, the presiding judge, refused plaintiff's 7th request to charge, to wit: 'that the instrument sued on is conclusive evidence that the contract was not made with defendant bank, unless it is proven to the satisfaction of the jury that the plaintiff was induced to take it by the fraudulent representations of C. J. Iredell,' but modified the same by adding thereto: 'Well, that which is *prima facie* is always conclusive unless you remove it; therefore, it is conclusive evidence it was made with C. J. Iredell and not with the bank, unless you are satisfied that Iredell had the right to act for the bank. With these explanations, that proposition of law is correct'—defendant urging as error that the said modifica-

tion was calculated to lead the jury to believe that it was not necessary for the plaintiff to prove that there was fraud or misrepresentation on the part of the witness, C. J. Iredell, but upon simply proving that he had authority to act for the bank, they might find for the plaintiff."

After reflection, we are not able to agree with the appellant, that the modification of the request to charge, as made by the Circuit Judge, would or might cause the jury to believe that it was not necessary for plaintiff to prove that there was fraud or misrepresentation on the part of the witness, C. J. Iredell, but if the plaintiff proved that Iredell had authority to act for the bank, that would justify the jury in rendering a verdict for the plaintiff. A judge, like any one else, in law must be judged to have meant what he actually said, or what is naturally and directly deducible from what he did say. What he did say was, that *prima facie* the certificate of deposit in this cause was to be held as that of Charles J. Iredell as an individual, until such *prima facie* view of it was removed by testimony here offered that Charles J. Iredell acted for the bank (defendant) in making the certificate of deposit. There is no duty in a judge to charge upon abstract propositions of law; he must mean them to fit the facts in testimony. This testimony did not stop at simply stating that Mr. Iredell was authorized by the bank, as its president, to receive deposits, but that he as such president and under such authority did receive deposits, not only for the plaintiff, but from other depositors in said bank. The Circuit Judge nowhere restricted the jury to an inquiry as to whether the bank had merely authorized its president, Mr. Iredell, to receive deposits. Let the exception be overruled.

The 14th exception was: "Because his honor modified plaintiff's 7th request to charge, by indicating his opinion that it did not have much to do with the case." There is nothing to indicate that the judge ever uttered one word that could be tortured into an opinion that the 7th request did not have much to do with the case. This exception is overruled.

The 15th exception is: "Because his honor refused defend-

ant's 10th request to charge: 'That this being an action at law, founded upon contract, it cannot be sustained by proof that the money in question was deposited by Iredell to his credit as manager of the partnership bank—that is, by the old bank—even by breach of trust, unless the jury believe that Iredell had, or was held out by the bank, the defendant in this case, to have authority to receive deposits, and that the deposit was actually made with the defendant bank,' but modified the same by adding thereto: 'That is the law as modified. If Iredell had no connection with the bank whatever, and fraudulently got this money from the plaintiff in this case, and deposited it in this bank, the bank would not be liable in an action at law; this would be an action on the equity side of the court'—thus indicating that, in his opinion, the fact that Iredell was president of the defendant bank, would establish a different rule and would sustain the present action, even though the deposit was not actually made with it."

There is room just here for some nice distinctions, but we do not know that we would be justified in entering upon any field save that selected by the appellants, as indicated by the substance of this exception. To business, then: The appellant sought by his request to charge, to have the Circuit Judge announce as the law governing this case, that here being a contract in the shape of a certificate of deposit, an action cannot be sustained thereon upon proof that the money was deposited by Iredell to his credit in defendant bank, as manager of the old partnership bank, unless the further facts are believed to exist, namely: that Iredell, as president, was held out by the defendant as clothed by it with authority to receive deposits, and that the deposit by plaintiff was actually made in this bank. Now the judge sustained the request, except he stated that if Iredell had no connection with the bank whatever, and fraudulently got this money from the plaintiff and deposited this money in this bank, the bank would not be liable in law, but would be in equity. Again, we cannot say that the modification as made by the Circuit Judge, when construed carefully, would naturally lead to the conclusion that the judge thought the fact that Iredell was president of the bank would establish

a different rule, and would sustain the present action, even though the deposit was not made with it. It is quite true, that if Mr. Iredell had not been president of this bank when he deposited, as alleged, the money of the plaintiff to his, Iredell's, credit as manager in said bank, and there was no privity between the plaintiff and the defendant, the plaintiff could not at law have sued the bank for that money; for the bank would have owed him no duty enforcible at law, touching a deposit entered by another person as his own; a resort to equity would have been necessary to show a duty of the defendant to the plaintiff, arising from some breach of duty on the part of the depositor. Now, all the judge did, was to preserve this distinction in the law. No ill effect could flow to the defendants therefrom. The exception must, therefore, be overruled.

The next exception—the 16th—is as follows: "Because his honor refused defendant's 12th request to charge: 'That neither of the resolutions of the board of directors, introduced in evidence, authorized Iredell, as president, to receive deposits except in the manner prescribed for the management of the bank,' but modified the same by saying: 'What I have to say is this: The Supreme Court has ruled on it, and I will have to follow it, whatever my views may be; but if the president was authorized by that resolution to establish a savings department, and borrow money at four per cent., then, if the resolution did not go any further to say by whom it was done, if the president represented himself to outsiders that he had authority to borrow at six per cent., I think the bank would be liable. The question, then, would be not between outsiders and the bank, but between the bank and its president, whether he was transcending the authority which he had, if they gave him authority to borrow money, or receive deposits and pay interest, that is enough to justify outsiders without further notice; therefore, I cannot charge that request, except as modified'—thereby indicating that the question was to be determined solely by the representations made by the president, Iredell, as to his authority to borrow money." We do not think that the deduction of the appellant, that thereby the Circuit Judge indicated that the question was to be deter-

mined solely by the representations made by the president, Iredell, as to his authority to borrow money [is correct]. Certainly the Circuit Judge nowhere says any such thing. On the contrary, in the supposed case, if the bank authorized the establishment of a savings department with interest for depositors, and no particular person as a bank official was charged by the bank with this work, then if the president held himself out to others as clothed with this power, and they took him at his word and deposited their money with the bank, the bank would be liable therefor to such depositors. This is good law. Let the exception be overruled.

The next exception is the 17th, which is as follows: "17. Because his honor refused defendant's 13th request to charge 'that the answer of the witness, C. J. Iredell, to the 11th direct interrogatory, that the money was placed on deposit in the name of J. D. Bickley, and he took the certificate, is shown by the context, and his answer to the 13th interrogatory to have referred to a deposit in the Depositors' Co-operative Association, not to a deposit in defendant bank.'" The judge was clearly right in refusing to make any such charge, for he would have charged upon the facts if he had undertaken to do so; and this he was inhibited by the Constitution from doing.

The last exception is the 18th: "Because his honor, the presiding judge, refused defendant's motion for a new trial in said cause, based upon the alleged errors of his honor in the admission of testimony, and upon the failure of the plaintiff to introduce any testimony to show that by the use of the term 'manager,' Iredell was authorized or intended to bind the bank." As will be seen, this involves two propositions. The first, relating as it does to alleged errors in the Circuit Judge in the admission of testimony, we have already seen is untenable. The second refers to the failure of the plaintiff to introduce any testimony that the use of the term "manager" by Iredell was authorized or intended to bind the bank. No doubt, the presiding judge conceived that the defendant had been accorded a fair trial; that a jury of the vicinage had found the issue against it; and that the same idea can be conveyed both by direct and by indirect means; in other

words, to enlarge the last somewhat, a man may directly and positively appoint A his agent, and give public notice thereof. The same man may, without any direct and positive appointment of A as his agent, just as effectually in law make such appointment by indirect means, such as allowing A to assert that he is such agent, allowing him while claiming to be such agent to occupy the principal's place of business, conduct while there the principal's business—all of which is fully ratified by said principal. The Circuit Judge did not err here.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE McIVER, *dissenting.* It seems to me that the material questions raised by this appeal have been decided by the conclusions reached under the former appeal in this case, reported in 39 S. C., 281, adversely to the result reached in the opinion prepared by Mr. Justice Pope under the present appeal, and, therefore, I cannot concur in such result. Time will not permit any extended discussion of the several points presented by this appeal, and hence I must content myself with simply indicating, very briefly, some of my reasons for dissenting.
. Under the former appeal, it was held that it was not competent to introduce parol testimony to show that the paper offered in evidence—the certificate of deposit—constituting the evidence of the contract which constituted the basis of plaintiff's action, was really intended to bind the defendant bank. In the former opinion, the following language is used: "It is quite clear that the terms of this paper not only do not imply, but expressly repel, the idea that the chartered bank was in any way bound thereby, or in any way referred to therein. On the contrary, the paper, in express terms, refers to and purports to bind a totally different person, for, in law, Iredell, as manager of the partnership bank, or as manager of the Depositors' Co-operative Association, and as president of the chartered bank, are entirely distinct and different persons. So that *even if it should be conceded that Iredell, as president of the chartered bank, had the power to bind the bank by such a* paper as this [italics mine], (a concession which I am not now prepared to make),

there is nothing whatever, either in the body of the paper or in its signature, to which alone we can look, which shows that he attempted or intended to exercise such a power." Then follows a quotation from Greenlf. on Evidence, which it seems to me is very appropriate to the present inquiry, but which need not be repeated here, as it is set forth in the former opinion.

It is true, that it was said in the former opinion that it was "very possible that if the parol testimony in question had been offered to show of what, or for whom, C. J. Iredell was manager," it would have been competent; and although that view was expressed as *possible* only, yet I am free to confess that I, *then*, was very much inclined to adopt that view; but I must add that subsequent investigation and reflection has tended to shake my confidence in such view, as there is nothing whatever on the face of the paper even to suggest that the defendant bank may have had some connection with it—not even the appearance of the name of such bank written or printed on the margin. Inasmuch, however, as there was no evidence whatever in the case tending to show that Iredell ever in a single instance signed his name as "manager" of the defendant bank, or was ever known or regarded as such, while, on the contrary, there was evidence that he was so known and regarded in conducting the affairs of the partnership bank, and was in the habit of signing certificates of deposit made with the partnership bank, as well as with the Depositors' Co-operative Association, "C. J. Iredell, Manager," the question whether it was competent to offer parol evidence to show for whom, or of what, Iredell was manager, becomes an immaterial inquiry, as there it no evidence which could give rise to such an inquiry. Indeed, the undisputed fact appearing in the testimony that while the defendant bank, when it first went into operation, used some of the blank certificates of deposit prepared for the partnership bank, with the word "manager" printed at the bottom, but with that word erased or written over with the word "president," conclusively shows that Iredell, when acting for the defendant bank, did not style himself "manager," but president.

It is contended, however, that the case presents itself in an

35—43

entirely different aspect from that which it wore at the first trial, by reason of the amendment to the complaint made since the former decision of this court, whereby fraud is distinctly charged, in that the plaintiff was induced to accept the paper, the certificate of deposit, in its present form, by the fraudulent misrepresentations of Iredell. Conceding for the purpose of this inquiry that these additional allegations in the amended complaint are true, then, it seems to me, that the plaintiff states a case for the reformation of the instrument evidencing the contract for the breach of which he brings his action, so as to express the real intent and terms of such contract, and such a case is within the exclusive jurisdiction of the Court of Equity. It is true, that it is often said, in general terms, that in cases of fraud, courts of law and equity have concurrent jurisdiction. While that may be conceded as a general proposition, yet it is not universally true. In 2 Pom. Eq. Jur., § 872, that distinguished author classifies the cases in which a Court of Law may take jurisdiction, and those which appropriately belong to a Court of Equity, amongst which latter he places cases for the reformation of a written instrument, so as to make it express the real intention of the parties; and in 1 Pom. Eq. Jur., §§ 171–172 and 188, it is said a case for the reformation of a written instrument is within the *exclusive* jurisdiction of the Court of Equity. This is obvious, for the reason that a Court of Law has no machinery by which the end desired can be obtained.

It is true, that since the reformed procedure instituted by the Code, a plaintiff may unite in the same complaint equitable and legal causes of action, when otherwise permissible, and, therefore, in the same complaint a plaintiff may ask for a reformation of a written contract, as well as for damages sustained by reason of a breach of such contract; yet it is equally true that, in such a case, the equitable cause of action must be tried by the tribunal appropriate to that end, and the legal cause of action by its appropriate tribunal. *Adickes* v. *Lowry*, 12 S. C., 97, recognized and followed in numerous other cases. So that it seems to me that the plaintiff could not recover against the defendant any damages for the breach of the contract set out

in the complaint as the basis of his action, until he had first obtained a decree of the Court of Equity for the reformation of such contract, so as to make it express the real intentions of the parties at the time it was entered into. The fact that the defendant may not have made any request to have the equitable and legal issues tried separately by the tribunal appropriate to each, cannot affect the question, for it is a matter of jurisdiction, and if, as we have seen, the Court of Equity has *exclusive* jurisdiction of the question of reformation of the terms of the written contract, then any attempt of a Court of Law to render judgment upon such an issue, even by the consent of defendant implied from want of objection, would amount to nothing, because of the lack of jurisdiction.

For the reasons above indicated, without going into any of the other questions presented by this appeal, I think the judgment of the Circuit Court should be reversed, and the case remanded to that court for a new trial.

Judgment affirmed.