### WILLIS v. HAMMOND.

1. EVIDENCE—COPY LETTER.—There was no error in admitting in evidence a copy letter from plaintiff to defendant (the defendant having failed to produce it on demand), without proof of the mailing and delivery of the original, where the answer to such letter was produced.

2. EVIDENCE—CROSS-EXAMINATION.—In action to recover a share in the profits made by defendant on a sale of his land through plaintiff's assistance, plaintiff testified that he had previously purchased a gold mine for defendant and had resold it at a profit, but, on objection made, was not permitted to testify as to a division of those profits. *Held*, that there was no error in permitting defendant to be interrogated on his cross-examination as to this transaction.

3. A NON-SUIT cannot properly be ordered where there is some testimony tending to establish the plaintiff's case as made in his pleadings; and there being some such testimony in this case, a non-suit was properly refused.

4. WRITTEN AGREEMENT—PAROL TESTIMONY.—A written agreement between A and B provided that "the former is authorized to sell the tract of land known as Saul's tract, in Colleton County, containing 605 acres, for $10,000 cash, without rebate or discount, and second named party agrees to pay A, for buying and selling said 605 acres, $2,500, power of attorney given for this purpose and good for thirty days." On same day B gave to A a power of attorney to sell this land. *Held*, that these two papers, construed together, show upon their face that they did not express the whole agreement between these parties, and the parol testimony showing that B furnished the purchase money, and A was to receive a share of the profits on the sale in consideration of his skill and services in procuring the purchase and sale of the land, and that the purchase was not completed for

more than two months after the date of this written agreement, the trial judge was right in declining to charge that the agreement was a nullity after thirty days had expired.

5. CONTRACT—TIME—WAIVER.—Time is not of the essence of a contract, where time is waived; and it was waived in this case by B's acquiescing in A's continued efforts to make a sale.

6. WRITTEN AGREEMENT—OTHER EVIDENCE—STATUTE OF FRAUDS.—This written agreement saved the contract from being defeated by a plea of the statute of frauds, and the stipulation as to the purchase of this land not being self-explanatory, could be explained by other testimony, written and oral.

7. IBID.—IBID.—A written contract is not to be received as the only evidence of all previous agreements on the same subject, unless it is complete in itself, and capable of being understood without other evidence.

Before ALDRICH, J., Charleston, March, 1893.

Action by E. Willis against Samuel Hammond, commenced May 2, 1891.

*Messrs. Buist & Buist,* for appellant.

*Messrs. Mitchell & Smith,* contra.

March 30, 1894. The opinion of the court was delivered by

MR. JUSTIC POPE. Edward Willis, of the city of Charleston, through a number of years, beginning with 1867, had devoted much time to the investigation of phosphatic deposits in the lands in what is known as the phosphate territory of this State. He discovered that a tract of land, containing 605 acres, known as the "Saul's place," and located in Colleton County, was rich in such phosphatic deposits. He sought out Samuel Hammond, who was then clerking in a book store in the city of Charleston, and informed him of the value of these lands because of these phosphatic deposits therein, at the same time informing him that an option for its purchase, at the price of $5,000, could be obtained from the owners thereof by paying down $600 in cash, and that the same could be sold to some New York parties for the sum of $10,000. After having visited the lands in question, Samuel Hammond agreed with Willis that he would advance the money, and from the pro-

ceeds of sale, after his reimbursement for all moneys paid out, one-half of the net proceeds should be retained by Hammond and one-half paid over to Edward Willis. On February 26, 1889, an option, in writing, until April 1st, 1889, on said property was given by the owner of the "Saul's place" in favor of Samuel Hammond. By this arrangement a commission of $200 was paid by the agent of the owner to Hammond, which $200 was equally divided between Hammond and Willis.

In view of Hammond's proposed absence from the city of Charleston, and in order that Willis might be clothed with power to negotiate a sale of the land to the New York parties, an agreement, in writing, as follows, was signed by Edward Willis and Samuel Hammond: "An agreement between E. Willis and Sam'l Hammond, both of Charleston, S. C. The former is authorized to sell the tract of land known as Saul's tract, in Colleton County, containing 605 acres, for ($10,000) ten thousand dollars cash, without rebate or discount, and second named party agrees to pay E. Willis for buying and selling said 605 acres ($2,500) twenty-five hundred dollars, power of attorney given for this purpose, and good for thirty days. Charleston, S. C., March 29th, 1889." On the same day the said Hammond executed, under his hand and seal, a power of attorney unto Edward Willis, by whose terms the said Willis was authorized, as such attorney in fact for the said Hammond, to sell the said lands, and the said Hammond agreed to make title to any one named, upon the payment of the purchase money. The sale of the land to the New York parties failed through their declining the trade offered. On 26th June, 1889, the deeds were made to Samuel Hammond as the purchaser under his options hereinbefore referred to. Although Willis exerted himself to find a purchaser, carrying party after party to view the lands, and working some himself in mining for phosphate rock thereon, yet it was not until February, 1891, under an option given in November, 1890, that the lands were actually sold, and then at the price of $15,000, to Mr. F. C. Fishburne as agent for Grafflin. Soon after this sale, Willis demanded an account of Hammond, to the end that he might receive his own half of the $15,000, after

deducting all expenses paid by Hammond. To this demand Hammond refused or neglected to accede save in the payment of some $750, as alleged commissions.

On the 2d May, 1891, Edward Willis, as plaintiff, brought his action in the Court of Common Pleas for Charleston County, against Samuel Hammond, as defendant, alleging substantially the foregoing facts, and demanding a judgment against defendant for $3,870, with interest from 28th March, 1891, being the one-half of the plaintiff's interest in the profits of the joint adventure and purchase of the land, less the amount already paid him, plaintiff. In the answer of the defendant, he admitted that it was upon the inducement of the plaintiff he became the purchaser of the Saul's tract of land and its sale at $15,000, but denied any liability to plaintiff therefor, because his agreement of 29th March, 1889, was all the agreement there was between them, and this agreement had failed, leaving a heavy load of responsibility on defendant to avoid loss therefrom. The statute of frauds and perjuries was formally pleaded in bar of any claims of plaintiff. He did set up some counter-claims, but these were afterwards abandoned.

The cause came on to be tried before Judge Aldrich and a jury. After verdict for plaintiff and entry of judgment thereon, the defendant appealed on the following seven grounds: 1. Because the presiding judge erred in admitting in evidence the copy of the alleged original letter from plaintiff to defendant, dated February 5th, 1891, without proper proof of the mailing or delivery of the original. 2. Because the presiding judge erred in refusing to grant a non-suit as requested by defendant. 3. Because the presiding judge erred in not holding that as the contract of March 29th, 1889, as a matter of law, absorbed all previous oral contracts precluding plaintiff from disputing the terms of said written contract of March 29th, 1889, and as plaintiff swore that there was no agreement between the parties after said date, that then a non-suit was proper; and plaintiff had failed legally to maintain his case. 4. Because the presiding judge erred in refusing to grant a new trial, whereas he should have done so on the ground that as the contract of March 29th, 1889, as a matter of law crystalized all previous

oral agreements precluding plaintiff from disputing the terms of said written contract of March 29th, 1889, and as plaintiff swore that there was no agreement between the parties after said date, that then a non-suit was proper.  5. Because the presiding judge erred in failing to charge as requested by the defendant as follows: "If the tract was not sold by plaintiff for defendant within thirty days from March 29th, 1889, then the agreement of March 29th, 1889, is a nullity, and defendant is not obligated thereunder."  6. Because the presiding judge erred in failing to charge as requested by defendant as follows: "As to any subsequent agreement to that of March 29th, 1889, and prior to the sale to Grafflin, alleged by plaintiff, if the jury believe that the same consisted of declarations or creations of trusts or confidences of lands, tenements, or hereditaments, or any interest in or concerning lands, tenements, or hereditaments, and the same is not in writing, signed by the defendant or by some person duly authorized by him so to do, then they must find for the defendant."  7. Because the presiding judge erred in ruling that the question asked Mr. Hammond on cross-examination, to wit: "Didn't you and Major Willis on one occasion buy a gold mine together?" was competent, saying: "It strikes me that in the examination of Major Willis, he said that he had bought a gold mine in North Carolina for $500, and sold it for $2,000.  I think the question is competent." Whereas he should have held that the testimony of Willis concerning the transaction as to the gold mine was objected to, and the objection sustained, and it was incompetent to further examine Hammond on the same question under objection duly taken.

Our observations upon the grounds of appeal will be confined within these limits: First. Alleged errors of the Circuit Judge in admission of certain testimony.  Second. Error alleged in refusal to grant the motion for a non-suit.  Third. Error as alleged in refusing certain requests to charge.  Fourth. Error in overruling motion for a new trial.

So far as the first division is concerned, it embraces the first and seventh grounds of appeal.  When plaintiff was being examined, he testified that he had sent by mail a letter to defendant, demanding an account relating to the

share of plaintiff in the $15,000, which had been received of
F. C. Fishburne, as the agent of Grafflin, as the purchase
money of the "Saul's place," in controversy here. The testi-
mony here, which was not objected to by defendant, and was
not denied by him, shows that the letter here complained of
was answered by the defendant on the next day. What vital-
ity, therefore, can there be in this objection of defendant as to
the proof of the way in which Willis',letter was sent, if the
defendant received it? Such a question has become an ab-
straction.

The next testimony objected to, and embodied in the seventh
exception, is that the presiding judge allowed the defendant,
on his cross-examination, to testify as to his transaction
with plaintiff in the purchase and sale on joint account
of a gold mine in North Carolina, on the ground that
plaintiff had testified that there was such a transaction. The
"Case" shows that Willis had so testified, and that it was only
when he was proceeding to disclose what division was made of
the profits from the sale of such gold mine that defendant ob-
jected to such testimony. It must be borne in mind that it
was on the cross-examination of defendant that this testimony
here complained of was admitted, and that in such cross-exam-
ination considerable latitude is allowed. The object of this
question may have been to impeach the accuracy or fairness of
this witness, and with this view the testimony may have been
admitted. These exceptions are overruled.

*Second.* It is settled law in this State that the Circuit Judge
ought not to grant a motion for non-suit if there is any compe-
tent testimony before the jury in support of plaintiff's
tender of issues, but, on the other side, it is equally true
if no such testimony is offered, such motion should be
granted. The solution of this question, therefore, involves a
consideration of the pleadings and the fact whether any testi-
mony was offered by plaintiff to support the issues there ten-
dered. Of course, it is no part of the duty of the Circuit Judge
or of this court, in passing upon the fact of such testimony being
offered, to decide the weight or sufficiency of such testimony,
for that is the exclusive province of the jury. Such a delicate

regard for the rights of the jury in this instance was shown by
the Circuit Judge that he even declined to give his reasons, in
the presence of the jury, for his refusal of the non-suit.

The pleadings on the part of the plaintiff consist of allega-
tions, that early in the year 1889, he induced the defendant to
embark in a joint enterprise in the purchase of a plantation of
land, known as the Saul's tract, to be resold at a profit, in
which enterprise the plaintiff was to contribute his knowledge
and skill as a practiced dealer in phosphates and phosphate
lands, and in which the defendant was to contribute the money
necessary to purchase these lands; that the proceeds arising
from the land when sold should be first applied to the reim-
bursement of the defendant for all moneys expended by him
therein, and the balance thereafter remaining should be equally
divided between plaintiff and defendant; that in pursuance of
this agreement the land was purchased by defendant, and title
taken by him, at the cost of $5,000; that said lands were sold
in February, 1891, for $15,000; that demand had been made
on defendant for an account and division of the proceeds of
such sale between plaintiff and defendant, but that defendant
had only paid plaintiff $780 thereof.    To these allegations de-
fendant admitted that he had purchased and taken title to said
lands, but alleged that the agreement of 29th March, 1889, was
the only contract he had made with the plaintiff; that plaintiff
had failed to sell the said lands within thirty days thereafter,
and had thereby forfeited all interest in the same; that no
other contract had been made with plaintiff by defendant, and
although he had sold the land for $15,000, and had received
payment, that the interest claimed by plaintiff being in refer-
ence to a contract as to land, under the statutes in force in this
State, such interest as claimed by plaintiff was not enforcible,
&c.

The testimony offered was that of the plaintiff alone up to
the time of the motion for non-suit.    He reiterated the allega-
tions of his complaint, showed that the option for the purchase
of the Saul's tract was in writing and dated 26th February,
1889; that the agreement of March, 1889, was not the entire
agreement between the parties, but only executed for the spe-

cific purpose of enabling him to execute an option for thirty days to the New York bidder; that the failure to make such sale to the party from New York at $10,000 was not the fault of the plaintiff; that after such failure, the plaintiff, with the knowledge and concurrence of the defendant, persisted in his efforts to sell, until the sale was finally consummated. In view of this testimony, we cannot say that it failed to respond to the issues tendered by the pleadings, and that there was an entire absence of proof of such issues. It follows, therefore, that there was no error here.

*Third.* The first error alleged in the refusal to charge defendant's requests is contained in the fifth exception: "If the tract was not sold by plaintiff for defendant within thirty days from March 29th, 1889, then the said agreement of March 29th is a nullity, and defendant is not obligated thereunder." It seems to us that no error can be imputed to the trial judge for refusing a charge, unless the charge itself fits the case. It has always been held that a judge cannot be required to charge upon abstract principles of law, which do not affect the case undergoing trial before him. Was the charge, in the form submitted to the judge, obnoxious to this objection? When properly construed, this agreement of 29th March, 1889, by its own terms, required that it should be construed along with the power of attorney executed contemporaneously with it. It will appear from these two papers:

(*a*) That the remuneration therein provided for Willis was not simply for selling, but buying, also, the Saul's tract of land. Does the agreement of 29th March, 1889, or the power of attorney executed the same day, explain how this buying of the Saul's tract of land was to be accomplished by Willis, who was to pay for it, and from whom the purchase was to be made? If none of these facts appear in those papers, and by these papers this duty is imposed upon Willis, then it becomes perfectly competent to resort to other evidence to show these facts. Now, by the "Case" itself, it appears that defendant's option to purchase the Saul's tract of land, by its terms, began on the 26th day of February and expired on the 1st April, 1889, two days after this agreement of 29th March, 1889, was entered

into, and that the purchase of this tract of land by the defendant was not consummated by a deed therefor until *June, 1889.* And yet all the testimony in the case, even that of the defendant himself, shows that such purchase was consummated under and by virtue of the option from one F. G. Henderson, *which was secured for him by plaintiff.*

(*b*) It further appears that *the sale alone* was limited to the thirty days succeeding the 29th March, 1889. Quoting the language of the latter part of the agreement of 29th March, 1889, "and second named party agrees to pay E. Willis for buying and selling said 605 acres ($2,500) twenty-five hundred dollars, *power of attorney given for this purpose and good for thirty days*" (italics ours). Now, the power of attorney only provides for *the sale* of said lands by E. Willis, showing that the reference to the power of attorney, made in the agreement, was for this purpose *alone.*

(*d*) The sale was limited to $10,000 as the price. Upon *this sale,* when made, the plaintiff was to get $2,500. Why this remuneration? The proofs in the "Case" show that no such figures are paid real estate brokers.

But it is insisted that time is of the essence of a contract. It is sometimes but not always. When parties to an agreement, by whose terms a definite period or date is prescribed, waive the same by their conduct under the agreement, it is perfectly competent for them to do so. Hence the language of the Circuit Judge in answer to this request: "Now, gentlemen, as I stated, time, unless specifically stated, is not considered of the essence of a contract, and whether it is, or not, depends a great deal upon what the parties do under it," was correct, especially in the light of what these parties now before the court did one with the other, while the sale was trying to be made, for in no single instance did defendant ever decline any service by the plaintiff under this agreement of theirs. In his testimony he distinctly states that at no time after 26th February, 1889, to the day he finally sold it, was it held by him for less than $10,000. This exception is overruled.

The other exceptions to be considered under this division,

11—41

namely, the sixth, relating, as it does, to the application of the statutes of frauds and perjuries, has given us a very nice question, and, but for the agreement of 29th March, 1889, wherein the purchase of the Saul's tract by Willis is provided for, the objection thus raised by the defendant might have prevailed. These statutory provisions are very wisely adopted by us. Their enforcement is a legal duty in all proper cases. It is of no use to plead the hardships arising under them, for it is the duty of the citizen to so observe the law that the safety of society, in their property rights, shall not be put in jeopardy. Let us explain what we mean by the protection which has enured to the plaintiff by reason of that clause in the agreement of 29th March, 1889, which requires the plaintiff to buy the Saul's tract. That clause occurs in an agreement signed by the defendant. That clause, so occurring, does not explain itself, and, therefore, allows oral and written testimony to be offered to explain it. Such testimony was offered by both parties to this action. It was an issue purely for the jury. Their verdict was in favor of the plaintiff on such issue. So, therefore, all we need consider was the issue rightly submitted to their arbitrament, and having determined that it was rightly submitted, the exception must be overruled.

*Fourth.* As to alleged error in refusing a new trial. The appellant bases his appeal upon an error of law and not of fact; hence it is properly presented for our consideration. In effect, the error is said to consist in this: that, as the contract of 29th March, 1889, as a matter of law, crystalized all previous oral agreements, precluding plaintiff from disputing the terms of said written contract of 29th March, 1889, and as plaintiff swore that there was no agreement after said date, then a non-suit was proper; and as the judge, when such motion was interposed, overruled the same erroneously, therefore, now when he hears the motion for a new trial and such error is forced home upon his attention, it was error not to order such new trial. We think we have hereinbefore shown how the contract of 29th March, 1889, failed to crystalize all the previous agreements. It is admitted that, unless the contract of 29th March, 1889, was a complete unity, and, therefore,

did not need anything to make it plain and operative, a resort to anything legally competent to make it plain as expressing the agreement of the parties to such contract is admissible. We have just seen, under the second division of this opinion, that it was not such a complete unit in itself, and that it thereby opened the way to testimony showing the precedent arrangements of the parties to this contention.    While it is a general rule that a contract in writing, complete in all its terms, draws into it all parol contracts preceding it, yet if it fails to state the consideration; if it uses terms that need explanation to be understood and applied; or if it is only a part of a general whole, it is perfectly competent to supply all these missing qualities by testimony giving all the precedent agreements of the parties.    *Knight* v. *Knotts,* 8 Rich., 35; *Rapley* v. *Klugh,* 40 S. C., 134; *McGrath & Bynum* v. *Barnes,* 13 *Id.,* 328; *Kaphan* v. *Ryan,* 16 *Id.,* 357-8.    The exception must be overruled.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.