ALEXANDER v. McDANIEL.

1. STATUTE OF FRAUDS—SPECIFIC PERFORMANCE.—PAROL AGREEMENT to reconvey lands upon valuable consideration held to be established, but deed simply set aside without decreeing specific performance. MR. JUSTICE GARY *dissents as to latter clause.*

2. SPECIFIC PERFORMANCE.—THE COURT OF EQUITY will use its discretion in adjudging specific performance of a contract, and sometimes modify the terms or conditions.

3. STATUTE OF FRAUDS.—Parol contract to reconvey lands may be set up where the complaining party has fully performed his part by executing a conveyance.

4. EVIDENCE—PAROL.—What was the "other valuable consideration" in a deed may be shown by parol.

5. EXCEPTION too general.

6. COSTS.—Sympathizing with and conniving at codefendant's wrong, does not make a party liable for costs.

Before ALDRICH, J., Aiken, January, 1899.    Modified.

Action for specific performance by Wm. Alexander against Jefferson McDaniel and B. F. McDaniel. From Circuit decree decreeing specific performance defendants appeal.

*Mr. M. B. Woodward,* for appellants, cites: *Courts have inclined against enforcing parol contracts on ground of part performance:* 2 DeS. Eq., 189. *And will not do so where evidence as to agreement is contradictory:* 32 S. C., 533; 21 S. C., 119; 41 S. C., 354. *Here there was no such part performance as takes case out of statute:* 6 Rich. Eq., 356.

*Messrs. Hendersons,* contra, cite: *What acts of part performance will take case out of statute and give effect to parol contract:* 1 Rich. Eq., 133. *McDaniel enters into a new state of possession under this deed, and that with acceptance of deed takes the case out of the statute:* 21 S. C., 493. *No sufficient legal remedy because compensation in damages here cannot be made adequate:* 16 S. C., 88. *Exception 9 too general:* 43 S. C., 99; 6 S. E. R., 169. *In case tried by Court without jury it is not illegal for it to hear incompetent testimony:* 11 W. Va., 535; 14 S. E. R., 1004.

November 28, 1899. The opinion of the Court was delivered by

MR. JUSTICE POPE. In the year 1879, Jefferson McDaniel conveyed two parcels of land, one containing 80 acres and the other 119 acres, to his three grand-children, William Alexander, George Miller McDaniel, and Annie Belle McDaniel, reserving to himself and to his son, B. F. McDaniel, life estates in the same, and also the usufruct thereof, during their lives. Jefferson McDaniel remained in possession of both tracts. The two grand-children, George Miller McDaniel and Annie Belle McDaniel, departed this life while minors, unmarried, without issue, and their estates vested in their father, the said B. F. McDaniel, in fee simple, as sole heir at law. The deed of conveyance in question is in the "Case," and from its terms the fee in the two tracts of

land was vested, one-third in William Alexander, and one-third each in George Miller McDaniel and Annie Belle McDaniel. So that after the death of George and Annie, B. F. McDaniel had two-thirds and William Alexander had one-third. In the year 1897, the said Jefferson McDaniel, although eighty years of age, began to agitate the matter of having his son, B. F. McDaniel, and his grand-son, William Alexander, convey by deed their fee simple estate in said two tracts to him. No one questions this fact nor the further fact that his son, B. F. McDaniel, cheerfully, and, as he says, unconditionally conveyed his two-thirds interest in said tracts to his father, the said Jefferson McDaniel. The trouble in the case comes from William Alexander. He admits that he united with B. F. McDaniel in the deed of conveyance, as desired by his grand-father, but he says that his uncle, B. F. McDaniel, told him that his grand-father was beginning to give way to old age, that he suffered from vertigo; that he felt anxious to so arrange the matters of his lands that after his death there would be no trouble in dividing it; that he wanted to divide the lands himself between his son and grand-son, who were his only heirs; that his grand-father talked to him on the same line; that he promised him that if he would unite with B. F. McDaniel in the deed of said lands to him, he would soon after he got title divide the lands between the said B. F. McDaniel and William Alexander in equal portions; that not only did his grand-father in person importune him as to making the deed, but that, at the old gentleman's request, John Bates and B. R. Dixon also urged him to make the deed, using the same inducements to his doing so that his grand-father had done; that finally, upon the distinct agreement that Jefferson McDaniel would divide the land equally between himself (William Alexander) and B. F. McDaniel, as soon as it could be done after he, Jefferson McDaniel, received a conveyance therefor, he executed the deed. The plaintiff's, William Alexander's, version of the matter is about the same as his witnesses, John Bates, William Dixon and

Hampton Irvin, but the defendants, who deny any parol agreement to divide the lands equally between B. F. and William, as the consideration for the deed of conveyance from William Alexander to his grand-father, made in 1897, are supported negatively, at least, by the testimony of B. R. Dixon.    The complaint and answers and the testimony set forth the foregoing history of the transaction between the parties, except that it should be stated that after William Alexander had made his deed to his grand-father and when the latter was afterwards requested by William Alexander to carry out his agreement, he denied making any agreement—or, as Alexander states it, this is what passed between him and his grand-father in this connection :· "I went to him about April (1898), and asked him what he was going to do about the land, I had heard so much talk about it.    He said, I haven't done anything, and didn't know that he ever would, except that he might sell the land for his own benefit, as he was old and couldn't work.    I told him if that was the decision that he had fell on, I thanked him, and told him good-bye."

This action was commenced 29th July, 1898.    Judge Aldrich, after a full hearing, decreed in favor of the plaintiff, and required Jefferson McDaniel to specifically execute his contract by conveying one-half of the two parcels of land to the plaintiff, and required Jefferson and B. F. McDaniel to pay the costs between them—for he in his decree found "B. F. McDaniel is as much responsible for this litigation as Jefferson McDaniel, and that he should pay half of the costs," but denied B. F. McDaniel any relief.

From this decree Jefferson McDaniel appeals on the following exceptions : First: That his Honor erred in his conclusion of fact, that there was an agreement entered into between Jefferson McDaniel, on the one side, and the plaintiff and B. F. McDaniel, on the other, under and in pursuance of which, plaintiff and B. F. McDaniel were to convey their interest in the land described in the complaint to Jefferson McDaniel, and in consideration of such conveyance, the

said Jefferson McDaniel was to divide the said lands into two parts, as near equal as possible, and to make the deed of conveyance of one-half thereof to the plaintiff, and the other half to the defendant, B. F. McDaniel. That these acts were to be done as soon as practicable. Second. That his Honor erred in his conclusion of fact, that the plaintiff in good faith, and in pursuance of said contract with B. F. McDaniel, did make the deed called for by said agreement. Third. That his Honor erred in his conclusion of fact that Jefferson McDaniel had failed and refused to carry out said contract, but retains the deed of the plaintiff and the land. Fourth. That his Honor erred in holding that the defendant could not take advantage of the statute of frauds in this case. Fifth. That his Honor erred in holding that the variation between the contract, as alleged and proven, is not of substance, and if at all, is as to immaterial matters. Sixth. That his Honor erred in holding that the giving of the deed of the plaintiff to Jefferson McDaniel was a valuable consideration of the contract. Seventh. That his Honor erred in decreeing specific performance in this case, when the contract, if any was made, was hard and destitute of all equity, and the evidence exceedingly contradictory. Eighth. That his Honor erred in decreeing specific performance in this case, when the contract, if any was made, was uncertain, inexplicit, unfair in all its parts, and the contract incapable of being enforced. Ninth. Because his Honor erred in considering the testimony of William Dixon, the same being irrelevant and incompetent. Tenth. Because his Honor erred in not deciding what testimony was competent, and what was incompetent, when the testimony was objected to, and its incompetency insisted on. Eleventh. That his Honor erred in finding that the deed from the plaintiff, and the defendant, B. F. McDaniel, was made on the 11th day of January, 1897, when the deed, the testimony and the admissions made by the plaintiff and his counsel at the taking of the testimony, show that it was made on the 11th of December, 1897.

The defendant, B. F. McDaniel, appeals on the following grounds: First. That his Honor erred in holding that the defendant, B. F. McDaniel, is as much responsible for this litigation as Jefferson McDaniel, and that he should pay half the costs. When the evidence shows that he was forced into the suit against his will, and he seeks no relief in the case.

. The findings of fact by the Circuit Judge as covered by the first exception, relating to a parol agreement between Jefferson McDaniel, on the one side, and the plaintiff and B. F. McDaniel, on the other side, is clearly sustained by the preponderance of the testimony. The plaintiff is clear and distinct in his statement as to such parol contract, embracing its terms. He is sustained by three witnesses, Jno. Bates, jr., Hampton Irvin and William Dixon. When B. R. Dixon seeks by his testimony to negative this parol agreement, he is flatly contradicted by M. E. Stallings, who swears that Dixon told him just before this suit was commenced that he, B. R. Dixon, told witness that at the time the deed was signed, "he understood that the deed between Willie Alexander and the old man was to make an equal division of the land between Willie Alexander and Ben. McDaniel," and that his only reason "for not signing the affidavits in the shape it was, was that he was not present when the contract was made between Alexander, B. F., and Jeff. McDaniel. Mr. Alexander was present when B. R. Dixon made this statement to me." Mr. Alexander afterwards testified that he was present when B. R. Dixon made the foregoing statement to M. E. Stallings. The motive power which induced B. F. McDaniel to sign a deed by which, if this contract was really made, he was to surrender a two-thirds interest in these parcels of land in order to get a half interest therein, is very hard for us to understand. The Circuit Judge finds as a fact that B. F. McDaniel was largely responsible for this movement against William Alexander. It may be that he, B. F., wished to deprive him, William, of any interest in the lands, which would be

17—56

the result in the event he induced William Alexander to sign away to his father his one-third interest in the land, and then he, B. F. McDaniel, could probably induce his father to give all the lands to him. This conclusion against B. F. McDaniel requires us to conclude that his father, Jefferson McDaniel, was also a party to this fraud. It looks a little strange that a man about eighty years of age, who had never before had a lawsuit, should have at this late hour become, to say the least, careless of the right, for he swears posi-, tively, not only that he made no such contract with his grand-son, but swears that William Dixon is speaking falsely when he swears that he, Jefferson McDaniel, owes him money that he borrowed and never has repaid. While all these things have force in them, what is there in the testi-mony that explains William Alexander's making a gift to so old a man as Jeff. McDaniel of one-third ownership in these lands, when he, Alexander, has a wife and children to sup-port, and his grand-father already has a life estate in all these lands? Then the testimony of the witness, John Bates, jr., who seems to be intelligent and a man of sub-stance, is very clear and positive. No witness denies that the old man, Jefferson, was at Jackson on the day that all three of the plaintiff's witnesses testify that he was there, and no one denies that Alexander had to be induced by per-suasion to make the deed to his grand-father. It does seem, though, that all that William Alexander parted with under his deed to his grand-father was a one-third interest in the two tracts of land, and that he should not be allowed to recover more than he paid for. This observation is made because, under the old time view of the law, if the law side of the Court of Common Pleas had been appealed to for relief, a recovery of the money he paid would be the limit of Alexander's recovery, and as, instead of money, he used land, he should only recover his one-third part of the two par-cels of land. Such a course would assimilate the case to one of a deed being induced by fraud, and when the Court ascer-tained the existence of fraud, why it simply declared the

deed null and void.   Now, if the deed from William Alexander and B. F. McDaniel to Jefferson McDaniel was declared void, why Alexander would have his one-third and B. F. McDaniel would have his two-thirds of the two parcels of land after the death of the old gentleman, Jefferson. McDaniel, who would be restored to his life estate in the lands when the deed to him *of the fee* was declared to be null and void at the outset.   This conclusion seems at variance to the contract it is attempted in this action to specifically enforce.   But it must be remembered that specific performance of a contract is addressed to the sound discretion of the Court.   Even in some instances when the proof is clear and positive, when the Court apprehends that there are some good grounds why the contract cannot, in its entirety, be fulfilled or enforced, in the absence of the power of the defendant to answer his default by the payment of money, then the Court does require the performance of the best the defendant can do.   Take the supposed case of a man who was under a contract to convey, but while holding the legal title to the land and the purchaser is in ignorance, or without notice, of any duty being owed by his grantor to another, buys, pays for and receives a title to a part of the lands, and is put into possession of the land so sold, then the Court of Equity would decree a specific performance of the contract as far as could be done.   The first exception is overruled.

As to the second and third exceptions, they must be overruled.

Appellant, Jefferson McDaniel, suggests by his fourth exception that the Circuit Judge erred in denying that the statute of frauds would not prevent the plaintiff from establishing by parol a contract in relation to land.   It is hardly worth while now to quote from text-books and reports as authority for the position that equity will enforce contracts in relation to land, where there is no writing signed by the party to be bound thereby to evidence the contract.   Equity will enforce such contracts under cer-

tain circumstances. One of the exceptions to the statute is when such a parol contract has been partly performed. In such an instance, equity will interfere to prevent fraud. Now, in the case at bar, William Alexander performed his part of the parol contract made by himself with his grandfather, for he made his deed to his grand-father for his one-third interest in the two parcels of land. If he cannot get an enforcement of this contract, he has sacrificed his property. If the agreement between himself, his grand-father and uncle was made, and in pursuance of its terms Alexander has parted with his lands, and the other party, the grand-father, refuses to perform his part of the contract, he has practised a deliberate fraud upon the son of his dead daughter, and equity should not stand by with folded hands.

4.     One phase of the matter is presented by the language used in the deed from William and B. F. to Jefferson McDaniel; in the statement of the consideration moving thereto, these words occur: "for and in consideration of the sum of $5 and other *valuable considerations.*" It is entirely competent to introduce testimony by parol to prove what was meant by the parties in the use of the words, "and other valuable considerations." We have but to refer to two cases, *Willis* v. *Hammond,* 41 S. C., 153, and *Rapley* v. *Klugh,* 40 S. C., 146, and also 1 Greenleaf Ev., s. 282. This exception must be overruled.

We do not see anything in the case which gives any support to the fifth exception, and it is overruled.

We hold, in answer to the sixth ground of appeal, that when a person under a contract conveys his one-third interest in a tract of land to another person, it belongs to that consideration known as a valuable consideration. Let this exception stand overruled.

So far as the seventh exception is concerned, we fail to see that the contract was hard and wanting in equity; but, as we before remarked, we believe the ends of justice will be fully met as to all three of these parties, if we set aside the deed of conveyance of William Alexander and B. F.

McDaniel to Jefferson McDaniel, and declare that Alexander is entitled to a one-third share in said lands, and B. F. McDaniel to two-thirds therein—both being postponed till after the deed of Jefferson McDaniel.

We see nothing in the eighth exception.

We think William Dixon's testimony relevant.

As to the tenth exception, we see nothing in the case which shows that the parties requested the Circuit Judge to pass upon any questions of competency of testimony. Besides, this exception is too general, and we overrule it on that ground.

The twelfth exception is immaterial.

The defendant, B. F. McDaniel, presents in his exception his objection to paying one-half of the costs of the case. We think the Circuit Judge went too far in this requirement. B. F. McDaniel conveyed, under the contract, his two-third interest in the lands to his father. He thereby placed it in his father's power to convey the lands in accordance with the contract. It is the failure of Jefferson to make the deed that enters into the cause of action of plaintiff. Nothing that B. F. McDaniel has done has in any manner entered into the breach of duty by Jefferson. Granted that he sympathized with and connived at his father's wrong to William Alexander, still that does not make him liable to pay costs for his father's delict. We sustain this exception.

It is the judgment of this Court, that the judgment of the Circuit Court be modified by setting aside the deed from William Alexander and B. F. McDaniel to Jefferson McDaniel, thereby leaving a life estate in the two tracts of land to the said Jefferson McDaniel, and declaring that the fee in said lands is already vested to one-third thereof in William Alexander, and to the remaining two-thirds in B. F. McDaniel, and that Jefferson McDaniel be required to pay the costs of this action. Let the action be remanded to the Circuit Court to enforce our views.

MR. CHIEF JUSTICE McIVER *concurring.* With some hesitation I concur in the result. I am not satisfied that the contract relied upon by the plaintiff has been proved as clearly as a Court of Equity should require, when asked to enforce the performance of what seems to me a most extraordinary arrangement, especially as to B. F. McDaniel, who, if the plaintiff should succeed, would lose everything and obtain nothing. But as a Court of Equity is invested with large discretion in a case of this kind, I am inclined to think that the conclusion reached by Mr. Justice Pope affords the best solution of the matter, and effects substantial justice between all the parties by placing them *in statu quo.* I concur, however, fully in the conclusion that there was error in imposing any part of the costs upon B. F. McDaniel. So far as I can discover, there is no testimony tending to show that he had anything to do in bringing about this litigation, and I am unable to perceive any reason why he should be charged with the payment of any part of the costs.

MR. JUSTICE JONES *concurs in result.*

MR. JUSTICE GARY *dissenting.* Under the pleadings in the case, this Court, if it is satisfied that there was such an agreement as is alleged in the complaint, should affirm the judgment of the Circuit Court as to specific performance of the contract; while, on the other hand, if it is not satisfied that such an agreement was entered into, it should dismiss the complaint. I am of the opinion that the Circuit Judge was correct in his findings of fact relative to the said agreement, and that there was no error on his part in adjudging that the contract should be specifically performed.

I, therefore, dissent from the opinion of Mr. Justice Pope.