6945

MUNN v. McWHITE.

1. REAL PROPERTY—EVIDENCE—ADMISSIONS—AMBIGUITY.—In an action for possession of land by one tracing his title through a mortgage given by one through whom defendant claims, a rough plat used by the mortgagor to show the location of the land to the mortgagee, and his statements as to the boundaries and what lands he owned in his written application for the mortgage, are admissible to locate the land as the description in plaintiffs' deed, when location is attempted thereunder, raises a latent ambiguity.

2. EVIDENCE.—AGENCY and purchase of lands and inspection by purchaser's agent cannot be shown by declarations of agent when such evidence contradicts existing deeds and plats, and there is no evidence showing title in the principal.

3. IBID.—DEEDS.—In action for possession of land by a plaintiff claiming through a mortgage, a deed made by mortgagor subsequent to the mortgage is not competent to defeat plaintiff's title.

Before KLUGH, J., Florence, March, 1907.   Reversed.

Action by S. A. Munn and Walter Cain against J. A. McWhite, Mrs. M. A. McWhite and E. W. McWhite. From judgment for defendants, plaintiffs appeal, on the following exceptions:

1. "His Honor erred, it is respectfully submitted, in refusing to admit in evidence the application for loan and the sketch or plat attached thereto, the execution thereof having been proven, and it having been made to appear that this application and plat constituted a part of the same transaction which resulted in the mortgage which constitutes plaintiffs' source of title.  He should have held that the description in the mortgage was ambiguous, and the testimony of this character was admissible to show the intention of the parties at the time of the execution of the mortgage.

2. "His Honor erred, it is respectfully submitted, in permitting the witness, A. A. Myers, over the objection of plaintiffs, to testify that the Dundee Mortgage and Trust Investment Company bought the land in question and sent a man from Columbia, who inspected the three tracts, there being no evidence whatever that the Dundee Mortgage and Trust Investment Company purchased the land, and no proof having been introduced tending to show that the party in question had any right or authority to represent the Dundee Mortgage and Trust Investment Company.

3. "His Honor erred, it is respectfully submitted, in permitting the witness, A. A. Myers, to testify that the first

time any objection was made by the owners of the land in question, and the first time any claim to the property in question was made, was after it came into the possession of the Atlantic Coast Lumber Corporation, the answer to the question being entirely irrelevant and injurious to the plaintiffs on the ground that it tended to prejudice the jury against the plaintiffs' claim.

4. "His Honor erred, it is respectfully submitted, in permitting the witness, A. A. Myers, to testify, over the objection of plaintiffs, that the defendants built their home and began to live on this property immediately after the sale, and that they built on it in about two years, this testimony being irrelevant to the issue of title, which was the only issue in the case, and tending to prejudice the jury against the plaintiffs' claim.

5. "His Honor erred, it is respectfully submitted, in refusing to allow the application of B. B. McWhite to the Dundee Mortgage and Trust Investment Company to be introduced in evidence when offered in reply to testimony of the defendants. He should have held that the declarations of B. B. McWhite, contained in this application, were admissible for the reason that they tended to contradict the testimony of defendant to the effect that B. B. McWhite owned lands which he did not mortgage.

6. "His Honor erred, it is respectfully submitted, in charging the jury that 'in a trial of a question like that presented in this case, and in a tribunal like that in which the case was tried, where the issue is a naked question of title to land depending on the description, we are bound to resort simply to the terms of the deed itself.' He should have charged that extraneous evidence may be introduced to show the surrounding circumstances and conditions of the parties to the contract at the time in order to enable the jury to ascertain and render certain a description uncertain in its terms.

7. "His Honor erred, it is respectfully submitted, in charging the jury as follows: 'It is not a question of what

the parties intended to convey and failed to express in the deed, but what the deed itself expresses. This is not an equity court, where we can go into speculation about the intention of persons, but it is a court of law, where we are bound to take the exact terms used, and if those terms aided, as I have said, by proper evidence can make the thing certain, then that may be done.' He should have charged that in this, as in all other cases, the intention of the parties is to be sought, and that intention can be arrived at by the consideration of all competent testimony.

8. "His Honor erred, it is respectfully submitted, in charging the jury as follows: 'If the description is so imperfect that it cannot, by the terms of the instrument itself, aided by the surrounding circumstances, be made to include the property, then the plaintiffs must be held to have failed to establish their rights to recover the land.' He should have held that parol testimony might be given in evidence to explain the situation of the land, contrary to the face of the mortgage, if it were evident from the nature of the land itself that there was a mistake in the mortgage.

9. "His Honor erred, it is respectfully submitted, in refusing to admit the application and plat attached thereto, offered in evidence and marked for identification X, when the same were offered in reply to the testimony of J. A. McWhite, wherein he testified that the third tract of land described in the mortgage was known as 'the Toney Mitchell tract,' the purpose of the plaintiffs in offering said application and plat being to show by the declaration of B. B. McWhite that this testimony of J. A. McWhite could not possibly have been true, this declaration being to the effect that tract No. 3 did not join any other property; that he mortgaged all the property he owned, and, therefore, that there could not have been a tract No. 4, as testified to by J. A. McWhite.

10. "His Honor erred, it is respectfully submitted, in not admitting in evidence the application and plat above referred to when offered in reply to the testimony of J. A.

McWhite and others, to the effect that 'the Toney Mitchell tract' was a tract separate and distinct from the home tract; the application and plat tending to absolutely contradict all of the testimony of this character introduced by the defendants.

11. "His Honor erred, it is respectfully submitted, in admitting in evidence, over the objection of plaintiffs, deed of B. B. McWhite to C. E. McWhite, dated the 20th day of March, 1885, and recorded the 20th of December, 1899, the same being irrelevant to any issue in the case, and tending to prejudice the jury against plaintiffs' claim."

*Messrs. Willcox & Willcox* and *Henry E. Davis,* for appellants, cite: *Ambiguity may be removed by extrinsic evidence:* 77 S. C., 454; 17 Cyc., 678; 41 S. C., 163; 43 S. C., 535; 56 S. C., 250; 20 S. C., 539, 578; 40 S. C., 145; 1 N. & McC., 45, 431; 2 Bay., 539; 27 S. C., 324; Harp. Eq., 56; 24 Am. St. R., 706; 1 Am. R., 82; 13 Pet., 99. *Application plat and mortgage was one transaction:* 77 S. C., 187; 66 S. C., 68; 57 S. C., 60. *Declarations of one in possession of lands are admissible against his granters:* 17 S. C., 35; 1 Green. Ev., sec. 189; 9 Rich., 53; 2 McC., 227, 241, 457; 4 Rich., 424; Riley, 213; 3 S. C., 577; 19 S. C., 480; 57 S. C:, 471; 4 Am. Dec., 267; 16 Cyc., 986, 990; 1 Green. Ev., sec. 189; Wig. on Ev., secs. 189, 1080, 1082; 16 S. C., 142; 3 McC., 266; 4 McC., 262; 14 Rich. Eq., 304; 29 S. C., 338; 33 S. C., 579; 57 S. C., 283; 2 Bay., 539; Harp. Eq., 56; 20 S. C., 518; 13 Rich., 72; 40 S. C., 145; 27 S. C., 387; 48 S. C., 472; 53 S. C., 31; 36 S. C., 598. *Agency cannot be shown by declarations of agent:* 44 S. C., 91. *When deed does not show entire contract extrinsic evidence is admissible:* 16 S. C., 357; 22 S. C., 26; 73 S. C., 42.

*Messrs. J. P. McNeill* and *S. W. G. Shipp,* contra. *Mr. McNeill* cites: *Evidence offered by plaintiffs to show intent of mortgagor incompetent:* 3 Rich., 129; 24 S. C., 128; 27

S. C., 380; 24 S. C., 128; 78 Am. St. R., 17; 74 N. W., 574; 77 S. C., 87; 39 Am. R., 585.

July 8, 1908.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.   The plaintiffs began their action on the 16th day of January, 1906, and in their complaint allege: that they are the owners and entitled to one hundred and forty-one and one-half acres of land, situate in Florence county, in said State, and bounded on the northeast by Georgetown road; on the southeast by lands of P. I. Bostick, and on the southwest and northwest by lands known as the Mary J. McWhite estate lands; and that the defendants are in possession and refuse to yield possession to the plaintiffs.

In due time the defendants answered, denying each and every allegation of the complaint, and praying that the same be dismissed, with costs.

The case came on to be heard at the March term, 1907, of the Court of Common Pleas, for Florence county, before Judge J. C. Klugh and a jury; after hearing the testimony and the charge by his Honor, the jury rendered a verdict for the defendants.   Whereupon, the plaintiffs appealed to this Court upon eleven exceptions.   We will now consider those exceptions.   Let the exceptions be reported.

The first, fifth, ninth and tenth will be considered together, as they relate to the same subject.

It seems that Capt. B. B. McWhite, of Florence county, was so unfortunate, in 1871, as to have recovered against him a judgment for the sum of one thousand, three hundred and fifty-one and 42-100 dollars, and that he secured a homestead in lands to be admeasured to him, after which all his remaining lands were sold by the sheriff.

By the return of the commissioners the homestead admeasured to Captain McWhite was the little swamp tract, containing three hundred acres, and a tract of one hundred

and forty-one and one-half acres carved out of what was known as the river tract.

In 1874 Captain McWhite acquired from Tom McWhite a tract of six hundred and seventy-eight acres.

In 1884 Captain McWhite applied to the Dundee Mortgage and Trust Investment Company for a loan of $2,500, and gave a mortgage on three tracts of land to secure said loan, and as the first step in said transaction he made out a written application, wherein he stated he owned three tracts of land and no other, and accompanying this application, he showed a rough plat, which represented the three tracts to be entirely separate and distinct. The blue print accompanying (page 110, of the "Case") is an exact copy of this plat, made on the 12th day of April, 1884, which was as follows: No. 1, containing 678 acres, bounded north by Bragdon's land; south by W. M. McNeill and Bardin lands; east by Baisin lands; west by B. D. Poston's. No. 2, 500 acres, north by H. Bartell; south by Thomas Johnson; east by Belin; west by Altman and Edwards. No. 3, 147 acres, north by a part of last described land, also east and west; south by P. I. Bostick. Under a decree of foreclosure these three tracts of land were sold and bid in by the Atlantic Coast Lumber Company. The Atlantic Coast Lumber Company was subsequently reorganized as the Atlantic Coast Lumber Corporation, and on the 6th day of June, 1905, this latter company conveyed the lands acquired at the McWhite sale to the plaintiffs, S. A. Munn and Walter Cain.

In the deed to Messrs. Munn and Cain, Nos. 1 and 2 are described as in the McWhite mortgage, and tract No. 3 as follows: "All that certain tract of land situated in the County of Florence and State of South Carolina, containing 147 acres, more or less, and bounded on the north by the estate of Mary J. McWhite; on the east by lands of Mary J. McWhite; on the south by P. I. Bostick, and west by lands of the estate of Mary J. McWhite." The blue print, at page

102, is a copy of this plat, and the acreage is shown to be 141½ acres.

After purchasing the lands Messrs. Munn and Cain obtained possession of tracts Nos. 1 and 2, but the defendants refused to give them possession of tract No. 3. This refusal leads to the present trial. At the trial it developed that defendants contended: first, that when plaintiffs obtained possession of the Tom McWhite and the home or Little Swamp tract they had obtained possession of all the land they had purchased, for the reason that the home tract consisted of the home tract proper and the Tony Mitchell tract—this last tract being tract 3, described in the McWhite mortgage and the subsequent deed from McCown, clerk to Atlantic Coast Lumber Company. The second position is that this was not the tract intended and the description was too indefinite to convey anything.

Plaintiffs, on the other hand, insisted that tract No. 3, as purchased by them, was a portion of the River tract, set apart to Captain McWhite as part of his homestead, and that the description as being bounded "north by part of the last described tract; bounded east and west by the same tract," was erroneous if by the "last described tract" was meant the home or Little Swamp tract immediately preceding it in the description, as that tract of land was several miles away. Now the question occurs, was the ruling of the Circuit Judge correct when he refused to allow in evidence the application and rough plat accompanying said application by Capt. B. B. McWhite to secure a loan of $2,500 from the Dundee Mortgage and Trust Investment Company, when it was in proof that the said B. B. McWhite was in possession of the said three tracts of land at the time his loan was granted by the Dundee company, and in which application of Capt. B. B. McWhite, it is stated by him that all of the lands he owned in the world were included in his application for said loan? Now it must be remembered that the defendants were privies in blood and in estate of said B. B. McWhite, that his representation in relation to said

lands were made while he was the owner and in possession of the same.

The imbiguity was a latent ambiguity arising in the language, "north by part of last described tract, east and west by same described tract," and it was admissible to show that the true meaning of such language by Captain McWhite was not to deny his statements by deed or otherwise. The latter could not have been done. This Court held in *Jennings* v. *Talbert,* 77 S. C., 454, 58 S. E., 420, that testimony might be introduced to show the true meaning of a latent ambiguity, and that such testimony was by parol. See also the cases 17th Cyc., 678; *Willis* v. *Hammond,* 41 S. C., 163, 19 S. E., 310; *Bickley* v. *Bank,* 43 S. C., 535, 21 S. E., 886; *Alexander* v. *McDaniel,* 56 S. C., 250, 34 S. E., 405; *Rapley* v. *Klugh,* 40 S. C., 145, 18 S. E., 680; *Colvin* v. *Oil Co.,* 66 S. C., 68, 44 S. E., 380; *Bruce* v. *Moon,* 57 S. C., 60, 35 S. E., 45. And in *Renwick* v. *Renwick,* 9 Rich., 53, it is held: "The declaration of parties may be given in evidence against their subsequent grantees." *Westbury* v. *Simmons,* 57 S. C., 471, 35 S. E., 764. The Circuit Judge was, therefore, in error when he refused to allow the testimony referred to. We sustain these exceptions (first, fifth, ninth and tenth).

We will now consider the second, third and fourth exceptions. The Circuit Judge allowed one A. A. Myers, over the objection of plaintiffs, to testify that the Dundee company bought the land in question and sent a man from Columbia, who inspected the three tracts. This was in contradiction of deeds and transaction and maps, made by B. B. McWhite, there being no testimony except the said Myers' declaration that said Dundee Mortgage and Trust Investment Company had ever purchased the land in question or that any agent of theirs had ever inspected said lands, there being no evidence that the said Dundee company became the said purchasers or had any agent except, as Myers declared, said agent so represented himself. This conduct on the part of the Circuit

Judge was calculated to throw a cloud on plaintiffs' rights by misleading the jury as to any such facts. These exceptions are sustained (second, third and fourth).

Sixth: We think that the language chosen by the Circuit Judge in his charge to the jury, herein referred to, was erroneous, for in a trial of an issue as to title to land we are not compelled to resort simply to the terms of the deed, otherwise a latent ambiguity could not be explained. The description here referred to is as follows: "Tract No. 3, bounded north by lands of last described tract, east and west by same described tract, and on the south by lands of Paul I. Bostick." There is no ambiguity on the face of this description, but when an attempt to locate the subject matter is made an ambiguity is raised; according to all the authorities such ambiguity can be explained by extrinsic evidence. This exception is, therefore, sustained (sixth).

Sexenth and Eighth: We have already held that a latent ambiguity in a description may be removed by extrinsic evidence; certainly the holding of the Judge to the contrary would nullify such effort, unless it could be made to include the land sued for. With regard to the distinctions in reference to courts in law and equity, in regard to testimony the true equity is to reach the intention, and such intention may be arrived at by any competent testimony; so far as the same affects ambiguity, that is latent. The recent case of *McCreery* v. *Coggeshell,* 74 S. C., 42, shows that the difference between intention in courts of law and equity do not exist. These exceptions are sustained (seventh and eighth).

Eleventh: While it is true that in a case affecting title a defendant may show as many claims as he can to defeat plaintiffs' title, yet a deed made by B. B. McWhite could not affect the question of plaintiffs' title, as Captain McWhite had no right to convey it except in subordination, and it was uncontradicted that the land so far as B. B. McWhite was concerned was sold in order to pay

31—80

off, as far as could be, a mortgage debt which he himself had contracted, the admission of such testimony was not competent, and this exception is sustained (eleventh).

It is the judgment of this Court, that the judgment of the Circuit Court should be reversed, and a new trial granted.

MESSRS. JUSTICES GARY, JONES *and* WOODS *concur in the result.*